LEWIS SHADD v. GEORGIA, CAROLINA & NORTHERN RAILROAD COMPANY.

*Action for Damages—Master and Servant—Vice-Principal—Negligence.*

1. A conductor is, in his relation to those subject to his orders on the train in his charge, a vice-principal acting for the company.

2. Where a servant's movements are directed by a vice-principal of a corporation and the former believes that discharge from employment will follow his disobedience of orders, his acts under such circumstances will not render him culpable or guilty of contributory negligence, but will be imputed to the company whose officer coerced him to act without regard to his own wishes or judgment.

3. Where plaintiff, an inexperienced brakeman, was ordered by the conductor of a railroad company, to make a coupling which an experienced brakeman had volunteered to make, and as plaintiff went between the cars, in obedience to the command and while he was arranging a displaced link, the conductor, who could see plaintiff's danger, signaled to the engineer to back the train and at the same time shouted to the plaintiff not to miss the coupling. *Held,* that it was error to charge that plaintiff could not recover for injuries received in so attempting to obey orders and make the coupling.

CIVIL ACTION, for damages, tried at January Term, 1895, of Superior Court of UNION County, before *Robinson, Judge,* and a jury. The following issues were tendered by the plaintiff and submitted by His Honor:

"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint?

"2. Did the plaintiff contribute to his injury by his own negligence?

"3. If so might the defendant, notwithstanding, by the exercise of proper care, have avoided the injury?

" 4. Is the paper writing, relied on by the defendant as a release, the contract of the plaintiff?

" 5. What damages, if any, has the plaintiff sustained?"

The testimony is fully summarized in the opinion of Associate Justice AVERY.

After all the evidence was in His Honor announced that he would instruct the Jury that in no event could the plaintiff recover, and that if they believed the evidence they must find the first issue " No," and that would be an end of the case. Upon this intimation the plaintiff declined to argue the case to the jury, whereupon His Honor so instructed the jury, under the objection and exception of the plaintiff and the jury answered the first issue " No."

It was in evidence and also admitted that conductor Reid was authorized by the company to employ and discharge hands working under him. There was a verdict as hereinbefore set forth. Plaintiff moved for a *venire de novo* and assigned as ground therefor that His Honor erred in charging the Jury that in no view of the case could the plaintiff recover and that if they believed the evidence they must find the first issue " No." Motion denied. Judgment as set out in the record. Plaintiff appealed.

*Mr. F. I. Osborne*, for plaintiff (appellant).
*Messrs. MacRae & Day*, for defendant.

AVERY, J.: A more experienced brakeman proposed to go in and make the coupling between a car standing on the track and the rear car of the train, to which the engine was attached, but the conductor, with an oath, ordered him back and said "No, let Shadd (the plaintiff) make it, how will he ever know anything if you never let him do anything?" The plaintiff then "signed the engineer down," and stepping in front of the stationary car began to strike

a link, that had "gotten crossways," with a pin which he carried in one hand, while he held his lamp in the other. The two cars at this moment were eight or ten feet apart, when the conductor, moving from the side on which he and his two brakemen were standing when the order was given, crossed between them to the opposite side of the track and waved to the engineer to back his train. When the brakeman was striking the link to get it into its place, the conductor was saying to him, "Don't miss the coupling, as I want to get away sometime to-night." As the pin was brought by a second blow into its proper place, the conductor again said in a loud tone of voice, "Don't miss the coupling." While these urgent commands were being given, the train was all the while moving back, in obedience to the signal of Reid, towards the new employee, who had gone between the cars under his express order and was then exposed to peril that was becoming every moment more imminent, as the train approached the stationary car. The engineer's movements were regulated in direction, if not speed, by the conductor's lamp until plaintiff's hand was caught between the drawhead of the front car and the link he had been adjusting on the draw-head of the rear car (he could not say confidently which) and was badly injured.

It is settled law in this State that a conductor is, in his relation to those subject to his orders on the train in his charge, a vice-principal acting for the company. *Mason* v. *Railroad,* 114 N. C., 718, and same case 111 N. C., 482. It can but be admitted as a fact, looking at the testimony as we must do, in the aspect most favorable to the plaintiff, that he went between the cars and exposed himself to peril at the command of the conductor, who, seeing him thus in danger, urged him to arrange the coupling as rapidly as possible, while he was at the same time causing the train to

approach him.   We think that these facts bring this case
clearly within the principle established on the first appeal
in Mason's case, *supra*.   This case is not exactly " on all
fours " with that.   It is really stronger for the plaintiff, in
that the testimony sent up discloses no express agreement
between the plaintiff and the company, such as was in evi-
dence there, and in the further fact that the plaintiff in our
case was sent between the cars by a direct order from the
conductor, and was urged to expedite the coupling by him,
he being all the while in a position to see that the servant
had no stick, nothing but a pin and a lamp.   Another dif-
ference is that the conductor Reid was so near that he might
have heard the sound made by the first lick at the displaced
link, and seeing how the plaintiff was delayed in adjusting
it, might have desisted from giving the signal to move back
the train, till his position became less perilous.   As the
facts appear, from the testimony sent up, the plaintiff was
selected by the company itself ( the conductor being the
embodiment of its authority ), instead of another servant,
who volunteered to take his place, was ordered to discharge
a hazardous duty without considering his previous training
or his present preparation of suitable implements for per-
forming the work, and was kept in a perilous position by
urgent injunctions to expedite the coupling till, by his
order to another servant, the train was so moved as to cause
the injury.   The plaintiff was brought within the reason
upon which the liability was declared to depend in Mason's
case, *supra*, because, from the moment when the first com-
mand was given till the injury was inflicted, he was kept
constantly in danger by repeated orders of an officer upon
whose favor his choice of retaining his place depended.
The servant's movements were directed by a living repre-
sentative of the authority of the company, and that he was
justified in assuming that discharge would inevitably fol-

low disobedience. The consequence was that, if his acts would ordinarily have rendered him culpable, they must, under the circumstances, be imputed to the company which coerced him by the command of its officer, without regard to his own wishes or judgment. The sudden order and the persistent urgency of the officer, while it was being executed, doubtless intensified the apprehension of consequences that might flow from disobedience, but neither in this nor Mason's case is it to be understood that the plaintiff's culpability depended upon the manner of giving the command, but upon the source from which it emanated. The error in the charge of the court entitles the plaintiff to a new trial.

New Trial.