EBBIRT WARD, by his next friend, S. P. Ward, v. ODELL MANU-
FACTURING CO.

(Decided June 9, 1900.)

*Evenly Divided Court.*

When in consequence of one of the Justices not participating in the
hearing of the appeal in this case, the Court was evenly divided
in their opinion, the judgment appealed from stands, not as a
precedent, but as the judgment of the Court of the Superior
Court. *Boone v. Peebles,* at present term.

CIVIL ACTION for damages for alleged negligence resulting
in occasioning the loss of an eye of the plaintiff, a child under
12 years of age, in employment of defendant company, tried
before *Shaw, J.,* at February Term, 1899, of IREDELL
Superior Court. The jury found the issues in favor of plain-
tiff and assessed his damages at $1,000. Judgment accord-
ingly. Appeal by defendant.

Justice FURCHES, having been counsel in the cause, did not
sit on the hearing of the appeal. The Court being equally
divided in opinion, the judgment for that reason stands, but
not as a precedent.

The case was heretofore before the Court, and new trial
granted. Reported in 123 N. C., 248.

*Messrs. B. F. Long,* and *W. J. Montgomery,* for appellant.
*Messrs. Armfield & Turner,* and *H. P. Grier,* for appellee.

CLARK, J. Mr. Justice FURCHES having been of counsel
does not sit, and the Court being equally divided, the judg-
ment below is affirmed. *Boone v. Peebles,* at this term, and
cases there cited.

The only error found by the other two members of the

Court who favor a new trial, is the following instruction: "If the jury should find from the evidence that, at the time of the injury complained of, the plaintiff was only 11 years of age, and that, on account of his tender years, his immaturity and inexperience, he did not fully realize and know the danger he incurred in passing said work-bench where wires were being cut, he was guilty of no contributory negligence in so doing." If this instruction had read, "did not fully realize and know the danger, *if any,* he incurred," it is conceded there would have been no error. But the jury could not possibly have been misled into thinking that the Judge meant to decide the issue of fact that there was danger, when he had repeatedly told them that this was a question of fact for the jury. The whole charge must be construed together, and not a detached sentence. *State v. Boone,* 82 N. C., 637. This is not the case where the Judge has given two contradictory instructions as to the law; in which case the jury may well be confused as to which to take. But, here, the whole charge taken together is perfectly intelligible and consistent. Juries are presumed to be intelligent and honest, and are as much an integral part of our court system as the Judges, and in their department probably make as few mistakes in finding the facts as the Judges do in finding the law or in applying it.

Besides, the fact that the plaintiff was injured and lost his eye at or near that bench is conclusive that there was danger, *res ipsa loquitur,* and the jury in no aspect were prejudiced by the inadvertent omission of the words "if any."

The Judge very properly adverted to the immaturity and inexperience of a child 11 years of age employed in a large manufactory filled with dangerous machinery, and told the jury correctly that if that was the cause of his approaching the danger he was not guilty of contributory negligence. The

humanity of the age has in very many of the States placed on the statute books laws forbidding the employment of children under 14 years of age in factories. So far as these statutes are based upon the inhumanity of shutting up these little prisoners eleven and one-half to twelve hours a day (the ordinary factory hours in this State according to the State's official publications) in the stifling atmosphere of such buildings, or depriving them of opportunity for education, or using the competition of their cheap wages to reduce those of maturer age, these are arguments on matters of public policy which must be addressed solely to the legislative department. But there is an aspect in which the matter is for the courts, that is, whether it is negligence *per se* for a great factory to take children of such immature development of mind and body and expose them for twelve hours per day to the dangers incident to a great building filled with machinery constantly whirring at a high speed. The children without opportunity of education, without rest, their strength overtaxed, their perceptions blunted by fatigue, their intelligence dwarfed by their tread-mill existence, are overliable to accidents. Can it be said that such little creatures, exposed to such dangers against their wills, are guilty of *contributory negligence,* the defense here set up ? Does the law, justly interpreted, visit such liability upon little children. From the defendant's brief it would seem that this child had been put to work in the factory at eight or nine years of age, as it states he had been working there over two years when injured. Whether they are thus imprisoned at work too early by the necessities of their parents or not, it is not the consent of the children. It is not law, as the appellant's counsel insists,, that the factory company is not liable because the father hired the child to the company. It is the child's eye which was put out, not the father's. The father could not sell his child, nor

give the company the right to expose him to danger. The factory superintendent put these children to work, knowing their immaturity of mind and body, and when one of them, thus placed by him, in places requiring constant watchfulness, is injured, every sentiment of justice forbids that the corporation should rely on the plea of contributory negligence.

The Judge certainly committed no error in leaving it to the jury to find that there was no contributory negligence, if the child incurred the danger, which put out his eye, by reason of his ignorance arising from his immaturity of years and inexperience.

Affirmed.

MONTGOMERY, J. The Court is equally divided in opinion, Justice FURCHES not sitting on the hearing, and the judgment below for that reason stands. I desire, however, to express my views on the merits of the case.

The plaintiff, a minor, brought through his next friend, this action to recover of the defendant damages for a personal injury which he sustained through the alleged negligent keeping and use of a work-bench and tools by the defendant in its cotton mills where the plaintiff was employed. The room in which the plaintiff was hurt was a very large one, contained nearly two hundred looms, and was divided by an imaginary line into two equal sections. Wood was the loom-fixer, or boss of one section, and Suther of the other. The plaintiff worked under the supervision of Wood, his work being, in his own language, "to carry quills from the weaver room up stairs to the quiller room to be refilled;" and the work-bench at which he was hurt was in the corner of the room, and in the section under the control of Suther. Upon this work-bench (about three feet wide by six feet long) tools of various kinds were kept for use in the factory—for mending anything

that broke—and especially for fixing and mending pattern chains and picker sticks. The plaintiff testified that he was, on the day of his injury, sent out of his section by Wood to Suther's section to do the work of the quiller boy in Suther's. section, who was sick or absent, and that while engaged in the work assigned him he had to go up an alley to the work-bench, and then turn and go down another alley to get quills. He further testified that "Dan Ryan was cutting the wire for pattern chains with a hammer and cold-chisel, and I was passing by the work-bench with a turn of quills and looked up to see what time it was, and just as I looked up a piece or scale of wire struck me in the eye." He further said that he had frequently, before that time, seen Dan Ryan engaged in the same work at the bench. Dan Ryan's testimony was, in substance, that he had been employed by the defendant for seven or eight years, and his duty was that of "rolling beams," and when he put on a warp for Ward he built pattern chains; that while he was cutting wire for this latter purpose with a chisel and hammer he saw plaintiff rubbing his eye, and at the same time declaring that something had gotten into it. This witness further said: "I put wire in vise and struck it with chisel, and it flew off. Wood ordered me to build chains, and I had to take it to the bench to build it. Usually they have wires cut, but none were there this time. The men whose business it was to cut wires had nippers. My regular business was rolling beams. Wood did not tell me to build this, but he told me whenever he was busy to build pattern chains and put them on. The men furnished me no nippers, but when I needed them I went to Wood to get them if he was in there. They kept chisel and hammer there. Wood was not in there at this time." There was other evidence to the effect that the cold-chisel, vise and hammer were kept on the bench and used for cutting wire. Wood testified for the

WARD *v.* ODELL.

defendant, that he did not send the plaintiff to Suther's section, and that he had never ordered or allowed Dan Ryan to use the bench and tools for any purpose.  Suther testified that Ryan never used the bench in work hours, and at no time for the company; that the plaintiff was not in his section during work hours on the day on which he was hurt.  This witness further testified that during the dinner hour "Ryan and plaintiff were standing at the work-bench.  I heard Ryan say to Ward he had better go away, 'this might fly off and hurt you,' and plaintiff stood there, and I heard the vise snap, and the boy threw his hand up to his face and got down, and I went up to him and asked him what was the matter, and he said 'Dan Ryan has put out my eye.'  I took him by the hand and led him through my section to the door, and met his boss, and said, "Mr. Wood, here is your boy with his eye hurt,' and he said 'how,' and I told him he and Ryan were fooling with a top; and I came back up stairs and saw the same tools always there and a top laying on the bench. He was trying to get the head of the screw off.  He had a screw in the vise, and it turned up and flew out.  Nobody in the mill but one woman in Wood's section.  The plaintiff had no business on this section."

The jury, whatever may be the justice of the verdict, found those controverted matters for the plaintiff.  The instruction which his Honor gave to the jury in respect to the relation between Wood and the plaintiff, that is, as to whether Wood and the plaintiff were fellow-servants, or Wood sustained the relation of vice-principal, and the instruction in reference to the nature and character of the tools and the use made of them by the defendant, furnished the defendant's chief grounds of complaint against the verdict and judgment.  As to the first instruction, his Honor told the jury that if they believed the evidence the plaintiff and Wood and Suther

were not fellow-servants, but that Wood and Suther were vice-principals, and that the plaintiff by his employment did not assume the perils arising from their negligence. On this point it may be well to recite the evidence. The plaintiff testified that "Wood and Suther were the bosses of the room where I was at work. Wood had control of the upper end of the mill to the right as you go in the door, and Suther the other half. Wood was my boss." He further said, "If I had refused to go in Mr. Suther's department I would have been discharged." Another witness, J. D. Johnson, a loom-fixer, who had worked in the room where the boy was injured, testified that when he worked for the defendant they (Wood and Suther) "were my bosses. I think they had a right to employ hands. Mr. Wood employed me once when I returned from Charlotte. Don't know that they had a right to discharge hands."

W. R. Odell testified that "Mr. Wood and Mr. Suther in their respective sections were loom-fixers. In each section were about twenty-five hands. They had no authority to employ or discharge hands from their sections. The superintendent had authority." On cross-examination the witness said, "Wood and Suther directed the hands in their sections. If hands disobeyed they reported to superintendent and recommended their discharge, which were usually followed."

Wood, a witness for the defendant, testified that "he had authority over the hands to keep them at work. No authority to discharge and employ hands; referred them to superintendent." On cross-examination, witness said: "I was section boss. Hands had to obey. If a hand disobeyed my orders I reported it to superintendent, and he usually acted on my recommendations; I kept such hands as I could control."

Suther testified that "the bench was for both sections. Hands under my control, and if they did not suit me I re-

ported them to superintendent, and my recommendations as to their discharge would be followed."

Upon a full consideration of the whole of the evidence we are satisfied that his Honor's instruction that Wood and Suther were vice-principals was correct. After all that has been written and spoken on the subject, it is still a difficult question to decide who is a fellow-servant. In *Dobbin v. Railroad Co.,* 81 N. C., 446, Judge ASHE, for the Court, said: "And so far as we have been able to find, no definition of the relation as a test applicable to all cases has as yet been adopted by the courts; and we do not think can be, so variant are the relations subsisting between master and servant, principal and agent, co-laborer and employee, in the various enterprises and employments, with their numerous and divers branches and departments: the cases frequently verging so closely on the line of demarcation between fellow-servants or co-laborers and what are called 'middlemen,' that it is difficult to decide on which side of the line they fall. Each case in the future, as heretofore, will have to be determined by its own particular facts."

It is further said in that opinion that "to constitute one the 'middleman,' he must be more than a mere foreman to oversee a batch of hands, direct their work under the supervision of the master, see that they perform their duty and in case of dereliction report them. He must have entire management of the business, such as the right to employ hands and discharge them, and direct their labor and purchase materials, etc. He must be an agent clothed in this respect with the authority of the master, to whom the laborers are put in subordination and to whom they owe the duty of obedience."

In *Patton v. Railroad,* 96 N. C., 455, Judge MERRIMON, for the Court, after stating that there seemed to be well-settled rule classifying the agents and servants of a common employer

into such as have authority to stand for and represent the employer in respect to the persons and things with which they are charged and such as have no authority, said: "Thus an employer might confer upon a particular laborer, charged to do a particular sort of service, but who simply by the nature of his employment would have no authority to represent or bind his principal in any respect, power to employ other like laborers with himself to do the service to be done, to direct and command them, when, where and how to work, to control and superintend them, and to discharge them from employment in his discretion although he should labor with and as one of them. And there can be no question that the employer would be answerable for the misfeasance or nonfeasance of such agent in the course of his employment, and in the exercise of the power thus conferred upon him. This is so because the agent in such case would be expressly authorized to represent, act for and in the place of his employer, in the business designated, and within the compass of the power conferred."

In the late cases of *Mason v. Railroad,* 111 N. C., 482; *Logan v. Railroad,* 116 N. C., 940; *Shadd v. Railroad,* 116 N. C., 968, and *Turner v. Lumber Co.,* 119 N. C., 387, the rule seems to have been simplified. In the last-mentioned case the Court said: "The test of the question whether one in charge of other servants is to be regarded as a fellow-servant or a 'middleman' is involved in the inquiry, whether those who act under his orders have just reason for believing that the failure or refusal to obey the superior will or may be followed by a discharge from the service in which they are engaged." That principle is the one announced in the other cases just above referred to. But it is argued by the defendant's counsel that Wood had no power to employ or discharge the hands under his control. It is true that the

secretary of the company, Mr. Odell, made that general statement, but he, on cross-examination, and also Wood and Suther, said that the hands were under the directions and control of Wood and Suther, and that whenever they reported a hand to the superintendent, and recommended his discharge, that such discharge followed. There was no evidence that the hands under the control of Suther and Wood ever came in contact with or received even the least order from the superintendent, or that he ever put his foot in this room. On this point it was said in *Turner v. Lumber Co.,* "Though the authority to employ or discharge the laborers subject to him may be evidence to show that the fear of his loss of employment, in case of disobedience of the orders of the company, is well founded, it is not essential that it should always appear that such authority is expressly given. *Mason v. Railroad, supra.* To concede that, is to afford opportunity to evade just responsibility by making the rule (when it never will nor can be carried into effect) that the power to discharge shall be lodged in another than the immediate superior, though the latter's recommendations of dismissal from service are always acted upon favorably. *Mason v. Railroad, supra.*  *  *  *  * When a servant never comes in direct contact with, or receives orders or instructions from one higher in position or power than the foreman, he is justified in looking upon the foreman as the very embodiment of the authority of a corporation. *Mason v. Railroad, supra;* Bailey's Master's Liability, p. 341; McKinney, F. S., sec. 14.

There is, therefore, no inflexible rule, growing out of the name or term, that a foreman exercising authority over those who work in a manufacturing establishment is or is not a vice-principal, but the question whether he is a fellow-servant or *alter ego* of the company depends upon the proof in each

case of the relations subsisting between the two. Wood, Master and Servant, sec. 450."

The most important part of the defendant's establishment was the keeping of these looms in operation. If they ceased to be worked there could be no product of manufactured goods. Wood and Suther, the loom-fixers and bosses, who had control and direction of the looms and hands, and of the bench and tools, were the only persons who could be expected or looked to to keep these looms in motion, and they, as we have seen, had power to employ and discharge hands and to direct and control them in their duties.

Wood and Suther then were vice-principals, and the jury found that the plaintiff was injured by the negligent handling of the bench and tools. The judgment of the Court below would be affirmed therefore if there was no error in the second instruction given by his Honor in reference to the nature and character of the tools and the use made of them by the defendant. But there was error in that instruction, and of so serious a nature that the case must go back for a new trial. We might have refrained from deciding the question whether Wood and Suther were vice-principals or fellow-servants of the plaintiff, but it is the chief question in the case, and the one chiefly argued by the counsel on both sides, and the one they most desire to be decided. Now as to the second instruction of the Court: His Honor in his charge had repeatedly, under proper instructions, left to the jury for their determination upon the facts, whether or not it was dangerous for the plaintiff to go to or be near the work-bench at the time the injury is said to have occurred; that is, whether the manner in which the tools were being used at the time of the injury made it dangerous for passers-by, and whether the defendant had knowledge of such danger or reasonably ought to have had such knowledge. It was a lengthy charge, and

that phase of the evidence and the law applicable thereto was dwelt upon over and over.    But in the latter part of the charge his Honor twice assumed that there was danger in the manner in which the tools were used on the bench at the time of the accident.    As I have said before, he had frequently left to the jury to find whether there was danger in the manner of the use of the tools, but we can not tell what effect the latter part of the charge on that head had with the jury.    They might have understood that that matter was left with them, but they might also have thought that when the Judge in the latter part of his charge assumed that there was danger in the use of the tools that that was the conclusion at which he had arrived.    And they might have been influenced from that view.    The instructions complained of were in these words:   "If the jury should find from the evidence that at the time of the injury complained of the plaintiff was only eleven years of age, and that on account of his tender years, his immaturity and inexperience, he did not fully realize and know the danger he incurred in passing near said work-bench where wires were being cut, he was guilty of no contributory negligence in so doing, and you should answer the second issue 'No.' "   "If the jury should find from the evidence that the plaintiff had sufficient capacity to know and did know said danger, but went in close proximity to same at command or direction of the defendant, he was guilty of no negligence in so doing."

When we look over the whole charge I find it explicit and covering well the points in the case, and the error we have pointed out must have been an inadvertence.    But we can not say that it had no effect upon the minds of the jury.    There was no other error in the case.

I think there should be a new trial.

FURCHES, J., did not sit at the hearing of this case.