FITZGERALD v. ALMA FURNITURE CO.

(Filed December 20, 1902.)

1. NEGLIGENCE —*Infants* —*Minor* —*Personal Injuries* —*Contributory Negligence.*

In this action to recover damages for injury to an infant employed in a furniture factory, the trial judge properly left the evidence as to the youth of the child (here 9 years old), his inexperience, ignorance of the nature and dangers of the work, and the failure of the company to instruct him as to the dangers incident to the work, to the jury on the questions of the negligence of the company and the contributory negligence of the infant employee.

2. EVIDENCE—*Infants—Personal Injuries.*

In an action by an infant to recover damages for injuries received while working in a furniture factory, the evidence of his father that he did not hire his son to the company, is competent. (Summary of age limit in other States and foreign countries, by CLARK, J.)

FURCHES, C. J., and MONTGOMERY, J., dissenting.

ACTION by William Fitzgerald, by next friend, against the Alma Furniture Company, heard by Judge *Thos. J. Shaw* and a jury, at February Term, 1902, of the Superior Court of DAVIDSON County. From a judgment for the plaintiff, the defendant appealed.

*Watson, Buxton & Watson,* for the plaintiff.
*King & Kimball,* for the defendant.

CLARK, J.  The plaintiff, who sues by his next friend, testified that when nine years old, one day when his father was absent from home (and he did not return until after the little boy was injured), he went to the factory of the defendant to get work, the foreman offered him twenty-five cents a day, and put him to work "tailing a moulder" and pulling sawdust to the furnace; the next day he tailed the planer, and the

next day about one o'clock he was put to work on the sander, which is a machine with rollers and sand-paper on the rollers, run by belts; that when he went to work at it a man was running the machine, and stood at its front end, and he was at the back end; the man told him to take the planks as they came out of the machine; he worked there an hour and a half before he got hurt; the planks were one foot wide, one and a half feet long and about an inch thick; he had never worked in a factory before, and had never seen a sander. He further said that the man in charge of the machine left to go after planks, but did not stop the machine; while the man was gone, he leaned up against the machine and laid his hand on it, was caught and his hand was mashed; he "hollered," some one came and raised up the machine; his hand was mashed between the rollers; he had hired himself for three weeks, and told the foreman he was a school boy. On cross-examination, he said he was then four feet high; he was not instructed about the machine; he did not climb up on the machine, and does not know how his hand touched the wheel; does not know where he put his hand, but didn't think it was where the lumber came out; he knew it would hurt to put his hands on the moving wheels; says he would not have been hurt if he had stood off from the machine; didn't remember what he leaned against the machine for, just never thought of himself, he reckons, and leant up against it; his hand could not get in there unless he put it in there. It was a pretty dangerous place where he was working; the sand-paper on the rollers was going round as fast as it could; don't think he put his hand in, but it couldn't have got in unless he put it in; one roller ran one way and one the other; was standing on his feet when he got hurt; did not get off the floor.

The plaintiff's father testified that he lived on a farm in the country; that he did not hire his son to the defendant, and knew nothing about it; when he got back home his boy

was in the bed with his arm dressed; an abscess rose on it; the doctor came to see the boy every day for ten days, and he was in bed for two months, and has suffered greatly.

Another witness testified, who thought that if the boy was only four feet high, he must have climbed upon the machine and stuck his hand in; that there was no danger from leaning against the machine, and it had an iron casting all around it, and there was no danger about the machine unless you put your hand in. This, in substance, is the evidence. The defendant did not offer any evidence, but moved to dismiss upon the evidence of the plaintiff.

During the discussion of the evidence, his Honor remarked to the plaintiff's counsel that he had not made out a case, unless it was negligent in the defendant to employ the plaintiff at all (to which there is no exception), and submitted the question upon all the evidence and attendant circumstances to the jury, who found that the defendant was negligent, and the plaintiff was not guilty of contributory negligence.

The Court charged the jury, at the request of the plaintiff: "If the jury find from the evidence that the plaintiff, at the time of the injury, was a boy nine years and five months of age; that he only had the intelligence of ordinary boys of his age; that he had never seen a machine like the one he was helping to operate until one o'clock of the day he was injured; that he did not have the capacity to understand the mechanism of the machine or its dangerous parts; that because of his want of age and experience, and while waiting for the man operating, he threw his arm upon the machine to rest himself, and for the further reason that the defendant's agent who employed him and failed to warn him against danger, then it will be the duty of the jury to consider these matters in passing upon the question as to whether the plaintiff was guilty of such negligence as the law terms 'contributory negligence,' which would justify the jury in finding the

second issue 'Yes.' " The defendant excepted to this, but we find no error. This hypothetical summary was a state of facts which the jury would be justified in finding from the evidence, and it could not be error in telling the jury they should consider that state of facts, if they found them to be facts, in passing upon the second issue.

To none of the other instructions did the defendant except. Whether they were not too favorable in some particulars to the defendant, is not before us, as the plaintiff is not appealing. The Court gave certain charges at the request of the defendant.

The other prayers for instructions were properly refused. Nor was it error to permit the father to testify that he did not hire his son to the defendant. The complaint alleged that it was negligence to employ a boy of the plaintiff's tender years, lacking in capacity to understand and appreciate the dangers incident to his employment, and unfit by reason of his youth and inexperience, as the defendant well knew, to be set at such work, without instructing or cautioning him, though he was wholly ignorant of the dangerous character of the same.

There was evidence strongly tending to prove that state of facts, and the real point in the case is raised by the motion to dismiss, *i. e.*, whether the facts, the youth of the child, his inexperience, his ignorance of the nature and dangers of the work, and the failure to instruct him, made it negligence to employ him. The reason of the thing and all the best authorities sustain that it was not error of which the defendant could complain to submit this evidence to the jury. Judge Cooley, in his work on Torts, page 652, says: "The master may also be guilty of actionable negligence in exposing persons to perils in his service which, though open to observation, they, by reason of their youth or inexperience, do not fully understand and appreciate, and in consequence of which they are injured. Such cases occur mose frequently in the em-

ployment of infants.   *   *   *   The duty of the employer
to take special cautions in such cases has sometimes been
emphatically asserted by the Courts."

The law, says Thompson Neg., 978, "puts upon a master,
when he takes an infant into his service, the duty of explain-
ing to him fully the hazards and dangers connected with the
business, and of instructing him how to avoid them.   Nor is
this all; the master will not have discharged his duty in this
regard unless the instructions and precautions given are so
graduated to the youth, ignorance and inexperience of the
servant as to make him fully aware of the danger to him, and
to place him, with reference to it, in substantially the same
state as if he were an adult."

These be wise and just words, and were so esteemed by the
Supreme Court of Ohio, which cited with approval both the
above extracts in *Rolling Mill v. Carrigan,* 46 Ohio St., 283;
15 Am. St. Rep., 596.   Further citing like authorities from
the decisions of sister States, that Court further held that an
infant employee whose employer has not instructed him, as it
was his duty to do, and who, while in the discharge of his em-
ployment, suffers an injury by reason of such neglect, may
maintain an action therefor, notwithstanding he did, by rea-
son of his youth and ignorance, some act which contributed
to his injury, but which he was not advised would be likely
to injure him.   To same purport, cases cited in the notes to
that case, 15 Am. St. Rep., 603, and *Smith v. Irwin,* (51 N.
J., 507), 14 Am. St. Rep., 699, and notes.

In *Tagg v. McGeorge* 155 Pa. St., 368, 35 Am. St. Rep.,
889, it was held that the master is liable for the injury result-
ing when he puts a young and inexperienced person to work
with a dangerous machine without giving suitable instruc-
tions as to the manner of using them, and warnings as to the
hazard of carelessness in their use.   See also notes to this
case, 35 Am. St. Rep., 889.   To the like purport is *Norton*

*v. Volzske,* (158 Ill., 402), 49 Am. St. Rep., 167, and cases cited therein and in the notes thereto.

In Bailey Per. Inj., Sec. 2766, it is said: "Persons who employ children to work with dangerous machinery or in dangerous places, should anticipate that they will exercise only such judgment, discretion and care as is usual among children of the same age, under similar circumstances, and are bound to use due care, having regard to their age and inexperience, to protect them from dangers incident to the situation in which they are placed; and as a reasonable precaution in the .exercise of such care in that behalf, it is the duty of employer to so instruct such employees concerning the dangers connected with their employment, which dangers, from their youth and inexperience, they may not comprehend or appreciate, that they may, by the exercise of such care as ought reasonably to be expected of them, guard against and avoid injuries arising therefrom," and further adds that an infant who, by reason of his youth and inexperience, is injured, when not properly instructed and warned as to the dangers incident to his work, may recover therefor. See also sections 2774, 2777 and 2789. In section 2767 (also in 1 S. and R. Neg., 73a), it is said, quoting authorities, that over fourteen years of age the law presumes capacity and intelligence, and under that age the presumption is the other way. The duty of masters to infants is also summed up in similar language to the above authorities in 1 Sher. and Red. Neg., Secs. 73 and 219.

In Watson Per. Inj., Sec. 114, it is said: "The defendant will be liable if negligent, though it is the act of the child injured which is proximate to his own injuries, if such act is of a character naturally to be expected of a child, and in accordance with the usual indiscretions and errors of judgment characteristic of immature years." It does not appear, and can not be ascertained, how this injury occurred. The little

sufferer, in his artless testimony, says he does not know; that he did not put his hand in, and he could not have been hurt if he did not, yet he was hurt. If, as is probable, from his account, he thought to rest his tired little legs by leaning against the machine (as he said he did), and dropping asleep he unconsciously flung his arm over the top to rest himself or to keep from falling, or if (as defendant contends), with the curiosity and lack of judgment nature makes incident to nine years of age, he climbed upon the machine "to see the wheels go round," and touched them, this, there having been, as he testifies, no instruction nor warning from the employer as to the danger, would, upon the above authorities, justify the finding of the jury.

There is no exception presented as to contributory negligence, but it may not be inappropriate to recall that in *Ward v. Odell,* 126 N. C., 946, this Court said (approving the charge of the Court below, who was the same Judge who tried this cause), that if the immaturity and inexperience of a child of eleven years old was the cause of his exposing himself to danger, he was not guilty of contributory negligence, and added: "The factory superintendent put these children to work, knowing their immaturity of mind and body, and when one of them thus placed by him in places requiring constant watchfulness, is injured, every sentiment of justice forbids that the corporation should rely on the plea of contributory negligence." There was a dissent in the case, but not upon this point.

The Court below did not charge in this case that employing a child of nine years of age in such dangerous work, especially without instruction, was *per se* negligence. Whether it would be error to refuse to so charge is not before us, and can not be presented here, for the plaintiff is not appealing, and we can only pass upon exceptions to the charge, or refusal to charge, duly noted in apt time.

But as it is a subject of growing importance to lawyers, as well as in public interest generally, it may be well to cite, as indicative of the conclusion to which the maturer judgment of mankind is tending, the age below which legislative construction in other States had made it illegal, and therefore negligence *per se* and irrebuttable, to employ any child in a factory, at the close of the year 1901. This list is taken from the State Laws in our Library, and as to the foreign countries from the official publications of the U. S. Government.

It is illegal to employ any child in a factory under *fifteen years of age* in *Florida, Rhode Island, Washington* and *Switzerland;* or under *fourteen years* of age in *Colorado, Connecticut, Illinois, Indiana, Massachusetts, Michigan, Minnesota, Nebraska, New Hampshire, New York, Oklahoma, South Dakota, Tennessee, Vermont, Wisconsin, Wyoming, New South Wales, New Zealand, Ontario, Queensland* and *Sweden.* In *Manitoba* it is illegal to employ children in any factory under sixteen years of age; in *Ohio* it is illegal to employ in a factory girls under sixteen and boys under fifteen. In *Louisiana, New Jersey* and *Quebec* the age limit is, girls fourteen, boys twelve. In *Pennsylvania, France, Germany* and *South Australia,* the age limit is thirteen. In the following it is illegal to employ children in any factory under twelve years of age: *California, Maine, Maryland, North Dakota, Austria, Belgium, Denmark, Great Britain, Holland, Norway* and *Russia.* During the present year, *Kentucky, Maryland,* and perhaps others, have enacted similar laws, making under fourteen years the limit, and *Virginia* has adopted the twelve-year limit. In *Porto Rico,* children under sixteen are prohibited by law from working in factories more than six hours in twenty-four, and in *Great Britain,* children under fourteen years can work only seven hours per day, and all under twenty-one are prohibited night work.

" The sob of the child in its helplessness,
  Curses deeper than the strong man in his wrath."

With this consensus of opinion in nearly the entire civil-
ized world, it might be that it would not have been error if the
Judge had held that it was negligence *per se* to put a child of
the tender age of nine years to work on a dangerous machine,
which he had never seen before, without any instructions or
warning, and to leave him there by himself without stopping
the machine.    But, however that may be, it certainly was not
error to leave the question of negligence to the jury with the
charge given in connection therewith, which was very favor-
able to the defendant.

No Error.

MONTGOMERY, J., dissenting.    The allegations of the com-
plaint, substantially stated, are:    First, that the defendant
employed the plaintiff, a child of nine years of age, to work
for it around a machine called a "sander," used for sand-pa-
pering lumber, and which consisted of a large iron frame
"upon which were adjusted a system of drums covered with
sand-paper, over which there revolved rapidly a system of
iron rollers or cylinders when in operation, and which said
rollers or cylinders were unguarded and uncovered, and ex-
ceedingly dangerous when operated by an experienced
workman.    Second, that the plaintiff was inexperienced in
the use, and ignorant of the dangerous character of said ma-
chine, and that the defendant, knowing of his youth and in-
experience and ignorance, employed the plaintiff and set him
to assisting in sanding pieces of lumber with the machine.
Third, that the defendant carelessly and negligently omitted
to give the plaintiff instructions in relation to his work, or to
caution him as to the dangers incident thereto.

There is an allegation of the complaint in these words:
"That the plaintiff, by reason of his tender years, lacked the
capacity to understand and appreciate the dangers incident

to his employment, and was unfit by reason of his youth and inexperience, to be set at such work, which the defendant well knew, but carelessly and negligently so engaged him in it." There was another allegation that the child was badly hurt while he was engaged in his work, and that the injury was permanent.

At the end of the plaintiff's testimony, the following statement in the case on appeal appears: "The defendant here moved the Court to dismiss the complaint, under the Act of 1897, Chap. 106, for the reason that the defendant was not shown, in any aspect of the testimony, to have been negligent. During the discussion of this motion, the Court stated to the plaintiff's attorneys that unless it were negligence in the defendant to employ the plaintiff at all, the plaintiff had not made out a case."

Upon a careful review of the evidence, we are of the opinion that his Honor made no mistake in his conclusions upon the effect of the evidence, and yet he submitted the matter to the jury, and there was a verdict for the plaintiff.

That was error. The jury should have been instructed that there was no evidence tending to show that the defendant was negligent, as alleged in the complaint.

The following is the whole evidence in the case:

The plaintiff, being sworn, testified in his own behalf as follows:

"I was eleven years of age the 1st day of August, 1901, and was hurt on Wednesday, the 3d day of January, 1900. I went to work in the defendant's factory on January 1, 1900, and had never before worked in any factory. My father was not at home on Monday, Tuesday nor Wednesday, the day that I was hurt. I went to the factory on Monday morning to get employment. I asked Mr. Redding if I could get work there, and he said yes. Mr. Grissom, the foreman of the factory, said he would give me twenty-five cents per day, and I hired to him, and he put me to 'tailing a moulder and

pulling sawdust to the furnace.' I tailed the moulder the first day, tailed a planer some the next day, and tailed the moulder and planer some the day I went to work on the sander. I went to work on the sander about one o'clock. A sander is a machine with rollers and sand-paper on the rollers, and is run by belts. The machine was running when I went to it. Ellison was running the machine, and stood at its front end, and I stood at the rear or back end. Ellison told me to go and take the planks as they came out of the machine. I worked there an hour and a half taking the planks out of the machine before I got hurt. The planks were one foot wide and one and a half feet long, and about an inch thick. I had never seen a sander before. The planks being sanded were safe doors. When I got hurt, Ellison had left the machine to go after more planks. This was the only time he left the machine. He did not stop the machine. When I took a plank out, I was standing where I always stood. While Ellison was gone, I leaned up against the machine and laid my hand on it, and it was caught, and I hollered. Somebody came and raised up the machine and took my hand out. My hand was mashed up. Nobody explained the machine or warned me where the dangerous places were. I hired for three weeks, and told the foreman I was a school boy. I was taken to Dr. Staunton, and my hand bled very much. My arm rose about a week after I was hurt. I had never before been in a factory to stay any time, but had been in furniture factories several times, but had not examined the machines. My hand was mashed between the rollers."

On cross-examination, plaintiff testifies:

"Mr. Redding did not tell me about the machine. I don't remember whether the machine was higher than my head. I was then four feet high. A sander is higher than a moulder. I could stand on the floor and see on top of the sander, and could see inside of the machine and see the rollers with the

sand-paper on them running. I don't know whether I could stand on the floor and reach over the top of the sander and put my hand down on the sand-paper. If I were to stand on the floor and lean up against the back of the machine, it would be safe, and I would not touch the machinery and it would not hurt me. I was not hurt by the cog-wheels on the side of the machine. I did not climb up on the machine. When standing on the floor I could lean up against the machine and could not touch the wheels, but could see the wheels running. I do not know how my hand touched the wheel. I was then four feet tall, and the plank came out of the end of the machine, about midway between the bottom and top of the machine. The end of the machine was covered up. The only place open was where the plank came out. I don't know where I put my hand, but don't think it was where the timber came out. There was no timber coming out when I was hurt. I was not expected to go up and touch the machine. I knew it would hurt me. I knew it would hurt to put my hand on the moving wheels. I could see the sand-paper running. I did not have to put my hand on the machine in order to take the plank away. The plank might fall on the floor, and I could then pick it up. When I see a wheel turning over, I know it would hurt. I would not have been hurt if I had stood off from the machine, and that was my proper place to stand. The timber was light. I would take two at a time and put them on the truck. It was better to wait and take two at a time. I don't remember what I leaned against the machine for. I could see if I put my hand between the rollers it would get hurt. My hand could not get in the machine if I had not put it in there. I don't know how long it was after I took out the last plank before I was hurt. It was about two minutes, I reckon. I was not hurt while taking out plank and putting it on the truck. I don't remember what I leaned against the machine for; just never

thought of myself, I reckon, and leant up against it.    It was
a pretty dangerous place where I was working, as the timber
would come out and push you backwards, if you did not look.
I got pushed against the truck that way one time.    The dis-
tance from the sander to the wall was as far as from me to
you (about 12 or 15 feet), and about the same distance from
the sander to any other machine.    The sand-paper on the
rollers was going round as fast as it could.    I could see if I
put my hand between the rollers it would get hurt.    If I had
stood off where I ought to have stood, I would not have gotten
my hand in.    I don't think I put it in, but it would not have
got in unless I put it in.    It was better to stand away from
the machine to take the plank out.

"On re-direct examination, the plaintiff testified:

"The plank was nearly the same length and width.    One
roller ran one way and another, another.    One roller was
over the top of the other.    I don't remember which roller
had the sand-paper on it.    I was standing on my feet when I
got hurt.    I did not get off of the floor.    I am five feet high,
now.    I don't know whether I have grown a foot or not.

"E. H. Fitzgerald, father of the plaintiff, being sworn,
testified for the plaintiff, in substance, that he lived in High
Point.    That he was father of the plaintiff.    That he worked
on a farm in the country.    That he was not in town the day
the plaintiff hired to defendant, and over defendant's objec-
tion, testified that he did not hire the plaintiff to the defend-
ant, and that he knew nothing about it.    Defendant's objec-
tion overruled.    Exception.    That when he got back the
plaintiff was in bed with his arm dressed.    That the doctor
came to see him every day for a week or ten days; that there
was an abscess on his arm, from which the plaintiff suffered.
That plaintiff remained in bed till the first week in March.

"On cross-examination, witness testified that the doctor's
bill was paid by the defendant.

"H. B. Crouch, witness for the plaintiff, being duly sworn, testified that he was working for defendant the day the plaintiff was hurt, and that when he got to the machine the plaintiff had his hand out of the machine. That when he first looked round on hearing the plaintiff holler, Albion Sheperd was getting the boy out. I have worked at sanders. The bed or frame of this sander was 36 inches wide and 5 feet 9 inches long, and 3 feet and 10 inches high. There were three sand drums in the machine, and the plank passes over the sand drum, and the rollers above feed the plank through. There are six or eight rollers, which are about three inches in diameter. It is 10 inches from where the plank comes out at the end to the top of the machine. The sand drums run towards the front and the rollers run towards the back of the machine. From the place where the planks come out to the floor is three feet. If the plaintiff stuck his hand far enough it would reach the sand drum.

"On cross-examination, the witness testified: The machine is 36 inches wide, 46 inches high, and 5 feet 9 inches long. If the plaintiff was only 4 feet high at the time he was injured, he could not stand on the floor and reach over and touch the rollers. If you look over the top of the machine, you can see the rollers turning over, all of them, if no timber was in the machine. I think the plaintiff would have had to get up on the machine to get to the rollers. Don't think he could stand on the floor and touch any roller that would hurt him. I don't think the plaintiff could stand on the floor and look into the machine. There is no danger in leaning up against this machine. It is about one foot from where plank comes out of the machine to the first roller, and this roller is ten inches from the top of the machine, and when the plaintiff was standing on the floor he would have to reach over the top of the machine and towards the front one foot and then down towards the floor ten inches before the roller would be

touched. It does not look to me like he could have got his hand in without climbing up. The machine has an iron casting all around it, from bottom to top, and he could not have got his hand in the place where the timber comes out. The sander was ten or fifteen feet from any other machine. All the wheels inside can be seen by looking over the top of the machine. There was no danger about this machine, unless you put your hand in it. Boys are generally employed to do such work as the plaintiff was doing, and a boy the size and age of the plaintiff could do it in safety. There is an apron six or eight inches wide projecting out across the end of the machine at a point about ten inches from the top, so that one could not lean directly up against the casting on account of this apron. The proper place to stand to tail this machine is about two feet from the back. There is no danger from belts in working near this machine, as they are at the front end and run at an angle of forty-five degrees or more.

"On re-direct examination, witness testified: Boys are employed to do this work because they are cheaper than men.

"Re-cross-examination: If the plaintiff was as much as four and a half feet high when hurt, he could not have stood on the floor and touched a single roller that would have hurt his hand. The rollers next to back of machine do not revolve when there is no timber going through, and I do not think the plaintiff could have been hurt by a feed roller.

Re-re-direct examination: If the plaintiff looked over the top he could see the feed roller running. The sand drums run all the time. They are about 18 inches in diameter.

"Plaintiff rests."

From the evidence, it is clear that the defendant had taken every precaution to encase the machinery, and thereby to render it as safe as could reasonably be done to those who were employed about it; and that any danger connected with its operation was fully known and appreciated by the plain-

tiff. No instruction, therefore, was necessary to be given him. So far as the whole evidence goes, the defendant was not negligent, either in the character of the machinery used, in the provision made for protection against harm to its employees, or in its failure to instruct the plaintiff as to any danger connected with his work.

There was testimony given by one of the employees of the defendant that little boys were employed to do the work which the plaintiff was engaged in when he was hurt, because their labor was cheaper than that of men. If the writer of this opinion had the power to correct that evil practice and bad example, it would be corrected at once. The employment of children of the age of this plaintiff by manufacturing establishments is revolting to the sensibilities of all generous minds; and the personal injuries, which often come to these little sufferers while engaged in such work, arouse the sympathies and also the indignation of great numbers of our people —of those who have children especially. If the writer was a member of the legislative body, his vote would be to prevent, by stringent enactment, the employment of children under twelve years of age in connection with dangerous machinery. But it is the function of the judiciary—the duty of the Court—to expound the laws, not to make them. According to the testimony, the plaintiff, at the age of nine years, and employed because his labor was cheaper than that of a man, has been maimed for life, and yet we, as a Court, in my opinion, can grant him no relief under the laws of the Commonwealth.

FURCHES, C. J. I concur in the dissenting opinion.