UNITED BLUE FLAME OIL STOVE CO. v. SILVER & CO.

(Circuit Court, E. D. New York. November 1, 1904.)

1. PATENTS—ANTICIPATION AND INVENTION—BLUE FLAME OIL BURNERS.
    The Ruppel patent, No. 616,425, for a hydrocarbon burner, construed, and *held* not anticipated, and to disclose invention. Claims 6, 7, and 8 also *held* infringed.

2. SAME—INFRINGEMENT.
    The Jeavons patent, No. 617,291, for a burner, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 616,425, for a hydrocarbon burner, granted to Henry Ruppel December 20, 1898, and No. 617,291, for a burner, granted to William R. Jeavons January 3, 1899. On final hearing.

Herbert H. Gibbs (A. S. Pattison, of counsel), for complainant.
Stephen J. Cox, for defendant.

THOMAS, District Judge. The complainant is the assignee of certain letters patent, viz., letters No. 616,425, issued on December 20, 1898, to Ruppel, and letters No. 617,291, issued on January 3, 1899, to Jeavons. The defendant is alleged to infringe claims 6, 7, and 8 of the former and claims 22 and 23 of the latter. The defendant denies infringement, and alleges anticipation and absence of invention. The subject involves blue flame oil burners, and is of very considerable commercial and economic importance. Petroleum burned in a wick or other lighting device is converted to a vapor, which passes upward between two concentric tubes (herein called a "combustion chamber") so perforated as to admit air, which, uniting with the vapor, ultimately forms carbon dioxide gas, or carbonic acid gas, which burns upon, and after passing out of, the tubes. That is, air passing from within and without, through the perforations to the space within the tubes, unites with the vapor therein, forms a gas, which is consumed largely after escaping into the open air. As the gas springs into flame after leaving the tubes or combustion chamber, its useful duty is to liberate its heat advantageously in direct contact with the utensil or surface placed above it, without throwing off offensive odors or unconsumed and poisonous elements. If the flame burn steadily, and blue in color, desirable combustion is evidenced. If the flame be yellow, imperfection of combustion and injurious results in use are indicated. Hence the production of a steady blue flame is the appearance sought, and to attain it burners of varied constructions have been devised. There has been a variety of devices for hindering or wholly preventing the passage of air to the upper part of the inner tube, and for the passage of the air admitted to such tube into the combustion chamber or to the flame. The uninterrupted passage of air through the whole length of the inner tube with a uniform opportunity to escape through its perforations into the combustion chamber would be injurious to the result desired. It is understood that the vapor, mingling with the air in the inferior part of the combustion chamber, and becoming gas, tends to reach the point of combustion as it rises, and that such combustion would take place disadvantageously within the tubes, rather than beneficially at the exit thereof, if the air supplied to the upper portion of the combustion chamber were not limited. Also, its increasing heat as the gas ascends tends to destroy the inner tube. Ruppel combined with the perforated tubes a chamber in the upper portion of the inner tube, closed the upper end with a cap and the lower end with a perforated partition or diaphragm; and to keep the upper inner sides of the inner tube cool Jeavons, among other things, provided for a partition or diaphragm with serrated or perforated edges, and located it below the upper end of the inner tube. Ruppel concluded, from the blue flame produced, and other favorable conditions, that there was an advantage in his device. Apparently he adjusted mechanical elements to facilitate phenomena that were recognized proof of a valuable result. Hence he invented, if anything, means to aid a known and desirable result. The most that can be

claimed for him is that he provided for parts and such mechanical adjustment thereof as would aid to cause proper combustion at an opportune location. But what did Ruppel construct, and what does he claim? The following figure illustrates it:

Claims 6, 7, and 8 are as follows:

"(6) In a burner, perforated tubes forming a combustion-chamber between them, two walls with a space between them spanning the bore of the inner of said perforated tubes and forming an air-chamber at the upper end thereof, means for supplying a limited volume of air to said chamber, and openings from said chamber for the escape of air, substantially as described.

"(7) In a burner, an outer and an inner perforated tube forming a combustion-chamber, a cap and a partition at the upper end of the said inner tube separated and forming an air-chamber between them, and means for supplying air to said air-chamber, substantially as described.

"(8) In a burner, an outer and an inner perforated tube forming a combustion-chamber, an air-checking partition in the upper end of the inner tube having an opening for the passage of a limited quantity of air, and a cap above and separated from said partition, substantially as described."

While there is some difference in the phraseology of the claims, Ruppel's conception embraced two perforated tubes, forming within them a combustion chamber, the closing of the inner tube at the top

with a cap, and placing at some distance below the top a diaphragm, through which air would pass in such limited quantity as to produce suitable combustion at the desired place. It is argued by defendant that his claims do not call for a closed top for the inner tube. His idea was to close the top. There is no evidence of contrary intention. The specification states:

"The inner tube, E, extends a little above the outer tube, D, and in addition to the diaphragm, 5, in the said inner tube, there is a closed cover or cap, 15, across the top of said tube, these parts forming a chamber in the upper end of the inner tube. A small air-opening through the diaphragm, 5, permits the passage of a limited volume of air to the said chamber. The perforations in the side of this chamber for the escape of air to the flame are in this case smaller and more numerous than the perforations in the body of the inner tube, thus contributing to the uniform distribution of the limited volume of air from the chamber."

The defendant's burner in use differs in some details from the above description. The following figure illustrates the Silver patent:

The exhibits of the Silver burner show the upper end of the inner tube somewhat below the upper end of the outer tube. The diaphragm, like that of Jeavons, has several openings at its periphery, and the bubbles on the exterior of the inner tube, above the diaphragm, indicate

combustion, while similar bubbles do not appear usually in the Ruppel burner above the diaphragm. This shows that the Silver tube feeds more air to the combustion chamber than does the Ruppel burner, or that it feeds it more advantageously for passage through the perforations. If the Ruppel claims are narrowed, by the words "substantially as described," to the exact description quoted above from the specification, the Silver burner does not infringe. But without such limitation the Silver burner easily falls within the claims, and, if the claims be valid, the Silver burner infringes. But if the claims be not narrowed to exclude the Silver burner, is there any burner in the prior art that also falls within the claims? The defendant refers to the Ruppel burner, patented in 1891, as an anticipation. The figure shows it:

There is a chambered cap at the upper end of an inner imperforated tube. The specification states:

"Air also passes up through the air-induction tube or central flue, G, into the chambered cap, c, escaping therefrom through the holes, s, in said cap, thereby causing intense heat at the top of the burner."

There is no diaphragm at the inferior end of the chambered cap, nor does any air escape from the cap into the combustion chamber. Air does escape from it at a point above the combustion chamber, and in this regard it resembles the Ruppel burner in suit. The reference simply indicates the progress in the particular art. Ruppel patent, 1892, No. 471,399, is shown by Figure 3:

The inner tube is not divided into an upper and a lower chamber. There is a perforated disk in the lower part of the inner tube, and a perforated cap above it, surmounted by a deflector. There is no separate chamber in the upper end of the inner tube, to which is admitted a limited amount of air, which is fed to the combustion chamber. Figure 8 of the letters shows the openness of the cap. The specification states:

"Arranged in the lower part of said chimney, H, is a perforated disk, t, which is preferably concave-convex in form, as shown by dotted lines in Fig. 3. The purpose of this disk is to equalize the distribution of air passing up through the center of the burner."

In the reissued letters of 1897 the parts are described and their functions explained. It appears that the inventor intended by the lower disk to check and equalize the flow of air to the combustion chamber; or, as he says:

"In the lower part of the inner perforated chimney-tube, H, is arranged a perforated, preferably concave-convex device which spans the said tube, and by reason of its location a slight distance above the lower perforations in said tube, as well as slightly above the point of vaporization, not only retards the upward flow of air, but deflects a sufficient quantity of air into the combining-chamber at that low area to serve the needs of the burner at that point."

As to the upper disk he says:

"A disk, P, Fig. 8, covers the interior of the inner perforated chimney-tube, H, and is shown with six different perforations for the passage of air from beneath. * * * The perforations, s, are relatively small, so as to sustain only a small flame, and are arranged in a circle some little distance from the edge of the disk, and hence do not interfere with the mixing-operation which goes on above said disk, as herein described.

"A scalloped deflector, O, is attached at its center to the center of disk, P, by a threaded stem extending some distance through said disk, whereby said deflector can be adjusted up and down or wholly removed. The gas rising from the combining-chamber flows over the disk, P, and said deflector about the scalloped edge thereof, as will appear more clearly in the description of the operation of the burner. * * *

"Obviously the aggregate area of scattered perforations, s, in disk, P, is considerably less than the aggregate area of the perforations in plate, t, and the area of the perforations, s, being sufficient to supply the demands of the burner for air from within at its top the detained air beneath said disk which passes plate, t, is checked back, so as to flow through the perforations of the inner tube and supply the needs of the combining-chamber between said disk, P, and the plate, t, below."

He further describes the functions of the parts:

"In the operation of a burner with a perforated air-retarding plate, t, in the lower portion of the inner perforated tube, H, and a perforated disk at the top of said tube a novel effect and advantage is obtained by reason of the association or combination of said tubes apart from their individual function. Thus, while the device, t, deflects the requisite air into the combining-chamber at a low plane to promote vaporization of oil, and the disk, P, provides a mixing and combining space at the top of the burner as well as providing for limited combustion above perforations, s, the two devices act conjointly in this: that plate, t, checks the supply of air into the space above it and the disk, P, checks back the air passed by or through said device, and thus promotes an even distribution of air to the perforations

of the inner tube between said parts, P and t, and avoids or prevents an excessive supply of air at any point through said inner tube."

The specification further states that the globule or flame over each perforation in the tubes is small, and dependent on the size of the opening and the amount of air admitted; that the globules below the lower plate, t, are larger than those above it; that those just above the plate are larger than those higher up; that the "aggregate effect of these numerously dotted flames is to convert the rising vapors into what is known as 'carbonic oxide' or 'carbon-monoxide' gas"; and adds:

"The chamber between tubes G and H is therefore a combining-chamber for these gases, and the actual combustion of the gas does not occur until the gas issues from said chamber at its top and meets with the requisite oxygen or air."

To understand the importance of the deflector and the perforations in the upper disk the specification must be quoted at some length:

"When this point is reached, the construction of the top of the burner becomes material to the end not only that combustion shall be complete, so as to avoid obnoxious and unhealthful odors, but to produce an even and concentrated flame and perfect combustion. Hence the peculiar construction of the disk, P, with a large imperforate central area over which the gases and such traces of vapor as may have escaped from the combining-chamber uncombined can flow and eddy and become combined under the favorable conditions there existing, the air entering through perforations, s, and the flame supported thereby serving to contribute to this result. This commingling and combining process is continued over and above the deflector, O, as the gases are evolved about the scalloped edge of the said deflector to the eddying-space immediately over the same. As this occurs, there is no combustion within the body of these moving, eddying, and combining gases, because there is no air to support combustion except the small flames over perforations, s, but a blue flame plays over the said gases, which thus gather and commingle from all around the deflector, O, upon and above the same with the highest point of gases and flame at the center, the flame meantime enveloping and investing the body of said gases from about the top edge of the outer tube, G, over the edge of deflector, O, to a common center somewhat above the middle of said deflector. This eddying and mixing operation not only has the effect of evening combustion, so far as the gases from various points of the combining-chamber are concerned, but has the advantage of compensating for any inequalities in the character of the gas or gas and uncombined vapor that may reach the top of the burner. It is very difficult to so arrange the tubes G and H that the intervening space will be the same always all around. Hence more gas or gas and vapor will rise where there is most room, because at such points the combining process is liable to be defective. Therefore, if the gas were consumed directly at the top of the combining chamber by a supply of sufficient air both within and without, the flame would be higher at some points than at others, and a 'ragged flame' would result, with here and there tongues of yellow flame; but by having a common mixing space centrally over and above the disk, P, to which the gases and vapors will naturally flow by reason of the construction of the burner, substantially as shown, they are commingled and further combined and converted, so as to sustain an even and complete combustion across the top of the burner."

The end sought by Ruppel in his several patents was the same; the means used were different; the parts earlier employed were more; the location of the disks or plates in the inner tubes differed. Nor do.

the claims of the Ruppel patent in suit cover the earlier device, for the cap is perforated; the air chamber is not at the upper end of the inner tube; it has a deflector to which an alleged important function is ascribed.

The Blackford patents—one No. 518,305, of 1894, and one No. 538,-638, of 1895—are easily distinguished from the Ruppel in suit. No. 518,305 is illustrated by Figure 2:

It has no cap. The specification best describes the several disks or diaphragms and their functions:

"A further feature of the invention is found in the perforated diaphragm, K, within the burner proper at its upper portion and about opposite the point of combustion. And in conjunction with this diaphragm is another perforated diaphragm, L, some short distance above the diaphragm, K, and supported within the inner tube, C, as shown, or in some equivalent way. The invention of the lower diaphragm is more particularly to prevent a rush of air up through the burner. It is found that with a diaphragm of this kind perforated for the passage of air, but yet serving as a damper or check to the flow of air, the burner itself is kept cool. There seems to be a quantity of cool air constantly present within the burner beneath said diaphragm, and the effect upon the burner is wholly different from what it would be if this diaphragm were omitted and there were a free flow of air through this space. The diaphragm, L, on the other hand, is contributory in a measure to this result, and is designed to prevent reflection downward of the heat of the burner. It will be noticed that an air space or chamber is thus formed between the two diaphragms, K and L, and this likewise contributes to prevent the downward radiation of heat, so that with the said diaphragms and the said chamber I am enabled to keep the body of the burner about the wick absolutely cool however long the burner may be used, and this is esteemed a great advantage on many accounts. It will be noticed that the

inner tube C, has also within it a diaphragm, N, toward its upper portion, and that there is a central air passage, 14, in this diaphragm or disk. Also that the said tube, C, is perforated beneath the said diaphragm, N, but is whole above the same except about the top where there are large openings or holes, 15. Now, one of the results of this construction is the supply of a flame centrally about the top of the said burner tubes. If some provision of this kind were not made combustion would occur only in a ring, as it were, about the top of the combustion chamber, and there would be a dead cold spot in the middle of the ring. This I overcome by the construction shown, and thus diffuse the flame and heat over the entire surface above the burner chamber. This occurs by reason of air flowing through the central hole, 14, which this meets with the products of combustion which flow inward from the combustion chamber through holes, 15, into what may be termed a partial vacuum within the top of the inner combustion tube. The fresh heated air fed through the said hole, 14, promotes and completes combustion in this central space."

The means for producing the result are quite unlike those of the Ruppel in suit. Blackford No. 538,638 is shown below:

The specification states:

"Now, having reached the top of the lower burner section, I provide an upper section consisting of two numerously perforated combustion tubes, H and K, seated upon the shouldered and flanged upper extremities of the tubes A and B, and about the top of the wick, C, on the said shoulders.

"Two diaphragms—12 and 13—span the inner tube, one near its bottom and the other toward its top; and both tubes have central air passages through them, but the upper one considerably smaller than the lower, thereby allowing enough air to pass through to supply the needs of combustion centrally in the top of the burner at a point just above the top of said combustion tubes, and at the same time checking back the air so as to cause it to flow freely to the combustion chamber between tubes H and K through the

perforations in K. The lower diaphragm—12—also serves as a heat deflector to protect the wick chamber beneath from becoming excessively heated. * * *

"By the use of the tubes H and K and the associated parts, combustion, in fact, does not really take place at the wick except in starting the burner, but a vapor is evolved, which burns between said tubes, and a perfectly blue flame is assured at the top of said tubes while the wick remains unconsumed and will last for an entire season or longer."

Here both diaphragms are perforated, and there is no cap. The defendant states that the inner tube does not feed air above the upper diaphragm. The diagrams in both Blackford patents, and the absence of any limitation to the perforations in the tube, do not confirm this statement.

Lannert & Jeavons, 1891, patent, No. 464,076, is shown by Figure 1:

This shows two perforated tubes, one within the other, to avoid the escape of vapor through the perforations, "causing disagreeable odors in the room, and robbing the burner to that extent of its fuel." There are employed "deflectors, which extend around about the sides of the burner tubes, as shown, and serve to convey the escaping vapor or gas back into the burner chamber to be consumed." There are three such deflectors. It seems that the mechanism is such that these deflectors are deemed necessary, and their importance is emphasized in the specification. Within the inner tube is a "combined air and flame deflector, as well as a shield for the burner." "In form it has the shape of a section of a cone, its narrower portion resting on the top of the inner burner tube, and its wider portion extending outward a sufficient distance to protect the combustion chamber between the tubes." The head has parallel slots formed about its sides, and to divert the air through the slots the top of the head is closed, but the bottom is open. "The conical-shaped deflector tube, h', extends into the space within the inner tube a greater or less distance—say half way the length of the

tube—and is open at its bottom, so that a free air passage is formed through the same end through the lateral slots, h³, in the head." It should be observed that where the deflector rests on the inner tube it closes it, so that no air beyond such point of closing can pass from the inner tube to the outer tube or to the flame, the air for feeding the flame above such point passing through the cone. In the lower part of the inner tube, and just below the cone mentioned, is the deflector, E, an inverted truncated cone. Its base spans the inner tube, and is entirely open, as is the lower and smaller end. Necessarily these two cones placed within the inner tube limit the air passing to such tube, but in fact the upper cone itself is an imperforated inner tube with slots entirely above the combustion chamber immediately under the cap.

It is considered that in no proper sense does this structure show "two walls with a space between them spanning the bore of the inner of said perforated tubes, and forming an air chamber at the upper end thereof." The most that can be said is that the two conical deflectors are so inserted into the inner tube that, together with the cap, they occupy such portion of the inner tube as to limit the access of air to it. The multiplicity of parts, tubes, deflectors, and cones, exterior and interior, bear but an imaginary similitude to the structure suggested by the patent.

The next reference is to the letters patent issued to Mummery, 1896, No. 563,788. Figure 1 illustrates it:

This has two concentric combustion chambers, simultaneously operated, formed by the perforated walls. There are three tubes that have air chambers formed by a perforated diaphragm and perforated cap. The whole interior of the inner tube is called an air chamber, and is marked "F," "into which the air may freely pass through the openings A', B', in the holder, A, and vaporizer, B." After providing for a cap over the inner tube "to engage the upper ends of the corresponding foraminous walls," and for a horizontal partition "intermediate the upper and lower edges" of such walls, it is stated that this partition is "constructed with orifices, h, preferably elongated, through which the air may freely pass into the regions of the chambers thereabove," and that the cap is "provided with suitable perforations or orifices, as at e, preferably elongated." Then follows this statement:

"These partitions, H, H¹, H², as indicated more especially in Fig. 5, are constructed with orifices, h, preferably elongated, through which the air may

freely pass into the regions of the chambers thereabove. The caps, E, E¹, are also provided with suitable perforations or orifices, as at e, preferably elongated. The partitions, H, H¹, H², are employed for the purpose of holding the respective parts adjacent thereto in place.

"It will be understood that when the burner is in use the foraminous walls on the inner and outer peripheries of the respective combustion chambers become very highly heated, and these partitions prevent all liability of the warping of said walls in consequence of the heat holding the parts securely in position.

"It will be obvious that air is admitted into the respective combustion chambers through the surrounding foraminous walls on both the inner and the outer peripheries of each chamber, the bulk of air being admitted into the combustion chambers through the lower perforations of the walls. * * *

"The upper orifices, e, in the caps, E, E¹, are preferably elongated, as before stated, so as to let the air that may accumulate in the upper portions of the corresponding chambers, F, F¹, more freely escape. These caps, E, E¹, E², are employed chiefly to deflect or hold down the air to cause its passage more efficiently through the foraminous walls of the combustion chambers. At the same time, in order to prevent an accumulation of dead air in the top of the air chambers and to prevent an undue deflection of the heat downward thereby, it is desirable to provide the slots therein, as above described, so that there may be a desired circulation of air therethrough to prevent the accumulation of dead air and to allow the heat to escape upward."

If this cap were imperforated, the interior tube would fall within the description of the claims of the Ruppel patent. It does not seem that there would be invention in placing the lower diaphragm higher up. But how about the perforations in the cap? The evident fact is that the holes in the cap might be so small as to render the cap substantially closed, and to force all the air through the side walls of the tube, or they might be so large as to allow the rising air to pass through the cap in quantity too large for the advantage of the combustion chamber.

Jeavons, complainant's witness, testified:

"For its proper operation there should not be any appreciable volume of air passed through its top, as in such case rather combustion would occur immediately above it, and the heat from this combustion would tend to disassociate the carbon monoxide gas, and cause a yellow flame. Again, such heat would be evolved some distance below the cooking utensil, and it would not be so effective for the purpose of heating such utensil as in cases where the gas passes up and is consumed close to the bottom of said utensil. If the opening were a very small one, so that combustion resulting therefrom were very small, the device might work much the same as it does with the imperforated cap. If the opening through the cap were any appreciable size, it might not only rob the chambers at the upper end of the inner tube of the air that should be deflected outward into the rising gases, but it would induce a suction through its openings so that the gas rising from the combining chamber would flow inward to the chamber and meeting the air passing through the lower plate would burn in this chamber."

Mummery does not describe the size of the perforations in the cap, but they should be large enough "so that there may be a desired circulation of air therethrough to prevent the accumulation of dead air and to allow the heat to escape upward," and small enough "to deflect or hold down the air to cause its passage more efficiently through the foraminous walls of the combustion chambers." The specification would then mean, "Make the holes in the cap large enough to let off the dead air and heat, and small enough to dam back the air so that it will pass through the walls of the tube." Whether holes can be so adjusted as to let air

and heat escape, and yet keep air desirable for the combustion chamber from escaping at the cap, does not appear. However, it would seem that the perforations in the cap must be nicely related to the perforations in the diaphragm and side walls to get the desired balance, so that the right amount of dead air and the heat would pass out above, and a suitable amount of live air would take a lateral direction. Ruppel was not at the expense of perforating the cap, nor did he assume the task of deciding just how large holes would perform the office of letting out dead air and heat, and at the same time not let out live air that should escape elsewhere. He adopted a closed cap. If there is no advantage in this, why does the defendant adhere to the closed caps? Why does it not use the Blackford, Mummery, or similar structures? It is asserted by the learned counsel for the defendant in his written argument that the Ruppel upper chamber in the burner used, admitting air through its diaphragm, is in operation practically the equivalent of Morrill's burner, which has a solid plug in the upper end of the tube; the Ewert, 1887, burner, which has no cap, and an imperforated diaphragm at the bottom of the tube; and the Ewert & Mehling, 1890, burner, which has a closed cap, and no perforations in the upper end of the inner tube; and it is asserted, further, that actual demonstrations in this suit show that the function of these upper chambers is the same, that the result is the same, and that the Ruppel burner performs the same function with the same result, whether the diaphragm is open or closed, or whether its cap is retained or removed. It will be noticed that the Silver burner is not included in this statement. But several hours of observation of the Ruppel and Silver burners, side by side, shows no superiority on the part of the Silver, nor does the evidence disclose that it has practical advantage. The blue flame of one was not distinguishable from that of the other, either in color or steadiness, or other desirable characteristic. Yet it is urged that the Ruppel feeds no air from the upper chamber to the combustion chamber, and that the Silver does. Here is apparent perfection of operation in two burners, each constructed according to the claims, the only difference in the burners being that the chamber in one is higher up than in the other, and the openings in the diaphragms are differently located. If there was no better result from the chamber composed of the perforated diaphragm and closed cap spanning the walls of the tube in the upper portion thereof, the parties, it is thought, would use the Ewert & Mehling burner, thereby saving the expense of a diaphragm and of the perforations in the upper part of the tube; or the Ewert, 1887, and save the expense of a cap and the perforation of the diaphragm. And if the Morrill is the equal of any, at least the expense of the solid plug is saved. The fact is that the complainant and defendant herein are not battling for the right to use this upper chamber described by the Ruppel claims without full knowledge of its utility and commercial advantage. The evidence of a considered and settled commercial practice persuades more than the experiments of experts, made for the purposes of the action, necessarily brief in duration, and not put into the ordinary domestic uses for which the burners are designed.

It now becomes necessary to give attention to the lamp devices.

In all of these a chimney is used, which takes the place of the outer tube. Hence such structures would not literally fall within the claims. But it is asserted that, if the chimney used with these lamp burners, thereby producing a luminous flame, be exchanged for the outer perforated tube, a blue flame burner will be evolved. Exhibits are produced to demonstrate this, and it is urged that there is no invention in putting a perforated tube in place of a chimney. The defendant's statement is that a perforated tube in the place of a chimney produces a blue flame burner, and that the function of an inner tube like that of Ruppel in the lamp is the same as if the lamp's chimney were exchanged for an outer perforated tube. The experiment in court with the Bohner burner, assuming that the exhibit followed the Bohner patent, did show a luminous white or yellow flame when the chimney was used and a blue flame when the outer perforated tube was used. The complainant's brief states that lamps with chimneys "burn vapor direct and feed air through flame spreaders to the flame. The invention in controversy does not have this mode of operation. Quite to the contrary, the invention in question is a gas-producing device, which first converts the vapor into a carbon monoxide gas in the combustion chamber, and then burns it as it issues therefrom. In these lamp patents the air is not fed to the vapor to convert it into a gas, but is fed to support an external combustion of the vapor direct." But it seems from complainant's own witness Smith that both in the lamp proper and blue flame burner the fuel is converted from hydrocarbon liquid to a vapor, then supplied with oxygen, and finally converted into carbon dioxide, or carbonic acid gas. But the absence of the outer tube causes the fuel thus converted to be burned in the chimney rather than above the combustion chamber. In the case of the blue flame burner the gas is made and is burned in the open air. In the case of the lamp, as Mr. Smith says, the "products of dissociation of hydro-carbon vapor, possibly containing free carbon, are heated to incandescence by the surface combustion, and thus impart the luminous qualities to such flame." Yet it seems by Mr. Smith's evidence already mentioned the hydro-carbon does at some stage of its consumption in the lamp become carbon dioxide. What, then, does the air entering the combustion chamber from the inner tube effect in the case of the lamp that it does not effect in the case of a burner? The outside tube admitting a large body of air seems to cause whatever difference there is, and that difference relates to the place where the converted fuel is consumed. It appears from the file wrapper that the question arose in the Patent Office, where three claims, which the inventor wished to add, were rejected by reference to the Jauch patent, No. 412,958. The examiner after such rejection, wrote:

"Perhaps, however, the applicant may show that the patent to Jauch is not anticipatory in character, for the reason that the air-checking diaphragms are in each case merged into a different genus, and have, therefore, unlike functions. What such functions are should be clearly indicated."

Nevertheless, the Patent Office, after the interference proceedings disclosed, allowed the present claims. But it is unnecessary to decide the question, for it is thought that the lamp burners do not anticipate.

The defendant's reference to the patents issued to Hoerle, Rhind, 1888, and Bohner, illustrate the prior art.   In each case the chimney takes the place of an outer perforated tube.   In Hoerle, shown below, there are two flanges, something like diaphragms, which differentiate it from the Ruppel in suit.

Rhind, 1888, patent is shown by figures:

A truncated cone is used in the inner tube, and the specification states:

"Not only is the air steadied by reason of this inner cone preventing the air from rushing directly through the perforations of the outer cone, but a still-air-chamber is provided between the cones F and G, and within this chamber the air is heated and expanded, and then supplied steadily to the flame throughout the whole lateral surface of the outer cone or thimble."

This structure neither resembles the Ruppel burner nor does it answer to the claims, for very much the same reasons given above for differentiating the Lannert & Jeavons, 1891, patent from the Ruppel in suit. The Bohner lamp is shown by Figure 1:

It shows a check plate of lesser diameter than that of the inner tube, to form a contracted annular passage to the upper portion of the distributor. The specification states that the disk acts as a "check to the upward draft of air, causing the same to be deflected outward at and near the base of the flame to cause a more perfect combustion at such point; the remainder of the air passing up around the check disk 7, and out through the perforations in the upper part of the skirt, to mix with the upper portion of the flame to complete the combustion." But the following sentence is significant:

"It is preferable, however, to discharge a large part of such air out in a radial horizontal direction through slits or passages left between the outwardly-flaring top of the skirt, 6 (inner tube), and the overhanging spreader plate or cap, 8, of the same."

This construction is shown in the diagram. This little device can be reshaped, the check plate amplified, the air chamber expanded and conformed to resemble the Ruppel burner, but the diagram and description in the specification do not bear much resemblance to the Ruppel patent.

It is impossible to discuss all of the varied propositions suggested by the defendant's counsel in his useful and lucid brief. They have been considered with care. The prior art, in some instances, both in lamps and blue flame burners, so nearly touches the Ruppel patent as to cause grave hesitation in ascribing to his structure the merit of invention. But carefully weighing all considerations, it is thought that the question should be decided that Ruppel did take a forward step in the art that is valuable and shows invention.

This brings the inquiry to the Jeavons patent. The claims involved, 22 and 23, require a structure containing (1) combustion tubes; (2) a plate between them around whose sides the air passes; (3) imperforated combustion walls above the plate; (4) either no cap or an open web or cap, "which spans over the space between the two tubes," through which holes alone the air above the plate can pass. The Silver structure shows a diaphragm with notches at the periphery, perforated walls above through which the air above the diaphragm must pass, because the chamber is closed by an imperforated cap. In view of these differences it is concluded that the defendant's structure does not infringe the Jeavons patent.

There should be a decree enjoining the defendant from infringing claims 6, 7, and 8 of the Ruppel letters, and that the defendant's structure does not infringe the Jeavons patent. Costs will be settled upon application.