W. E. HOLLIFIELD v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY AND J. C. HOLLIFIELD.

(Filed 19 December, 1916.)

**1. Removal of Causes—Diversity of Citizenship—Sufficient Petition and Bond —Jurisdiction.**

When a nonresident defendant files, in apt time, a petition and proper bond for the removal of the cause to the Federal court for diversity of citizenship, the former of which contains allegations of fact sufficient under the law to entitle him to a removal, the jurisdiction of the State court is at an end, and the issues of fact, affecting the right of removal, properly raised by the petition and papers in the proceedings, are to be determined by the Federal court.

**2. Same—Indefinite Averments.**

Where a nonresident defendant seeks to remove a cause to the Federal court upon the ground of diversity of citizenship, and alleges in his petition that a resident defendant was fraudulently therein joined to prevent the removal, before the State court is under any duty or obligation to surrender its jurisdiction there must be specific allegation of the facts constituting the alleged illegal or fraudulent joinder, and it is not sufficient to charge generally or by indefinite averment that the joinder is or was intended to be in fraud of the nonresident defendant's rights.

**3. Removal of Causes—Diversity of Citizenship—Pleadings—Joint Torts— Fraudulent Joinder.**

Where a nonresident defendant is seeking to remove the cause of action to the Federal court for diversity of citizenship, setting up the fraudulent joinder of a resident defendant to prevent his right thereto, the plaintiff is entitled to have his cause of action considered as stated in his complaint; and if it is therein sufficiently alleged that the cause of action arose from a joint tort, he may sue the wrong-doers jointly, and in the lawful pursuance of this right his motives will not be inquired into.

**4. Same—Insolvency—Conspiracy.**

Where a nonresident defendant seeks to have the cause removed to the Federal court, and the petition of the nonresident defendant sets up a fraudulent joinder of a resident defendant, the right of the plaintiff to sue the resident defendant is the material question involved, and the question of his solvency is immaterial; and where a conspiracy between the defendants is relied upon, the matters constituting the alleged conspiracy must be sufficiently alleged to raise the issue for the determination in the Federal court; and the fact alone that the resident defendant is the son of the plaintiff is insufficient.

**5. Same—Relationship—Jurisdiction.**

Where the complaint alleges that the resident defendant was the agent of the nonresident defendant, with the right to employ, discharge, and control the plaintiff and other employees in the work of loading tele-

phone poles upon a railroad car; that the agent negligently ordered the work to be done with insufficient help, without instructing the plaintiff, inexperienced in such work, and at the time the agent knew or should have known of the danger, etc., which, in its petition to remove the cause to the Federal court, the principal defendant does not directly controvert, but merely avers that it was not the agent's duty to provide sufficient help, and that he could not have failed therefore in his duty respecting it; that the resident defendant was the son of the plaintiff and permitted a judgment by default for the want of an answer; and that the cause alleged was only against the principal defendant: *Held*, the averment of the principal defendant is not sufficient to raise the issue of fraudulent joinder to have it passed upon by the Federal court, and deprive the State court of its jurisdiction.

#### 6. Appeal and Error—Joint Torts—Default—Final Judgment.

Where two defendants are sued for damages for a personal injury caused by their alleged joint tort, and judgment by default of an answer is taken against one of them, leaving open the inquiry, and issues as to negligence of the other, and the damages as to both, are duly submitted and answered, and judgment against both entered for the amount, the judgment so rendered is a final one against each and both of the defendants, without the necessity of having submitted a special issue upon the inquiry as to the one who failed to answer, the issue of damages submitted applying to both defendants.

#### 7. Appeal and Error—Unanswered Questions—Prejudice.

Where upon the trial of a cause questions asked a witness were ruled out and excepted to, it must appear what the appellant expected to prove by the answers, so that the Court may see in what respect, if any, he has been prejudiced, or the exceptions will not be considered.

#### 8. Principal and Agent—Vice-Principal—Trials—Evidence—Negligence.

Where the principal and his agent are sued for a personal injury alleged to have been caused by the negligence of the latter in ordering the plaintiff and others to do certain work under dangerous conditions, it is competent for the plaintiff to show that the agent was in control of the work and the employees, and that the latter had previously complained to the agent of the danger in doing the work under the surrounding circumstances, and that notwithstanding the complaint he had ordered it to be done.

#### 9. Negligence—Principal and Agent—Trials—Evidence—Opinion.

In an action to recover damages against a principal and his agent for the alleged negligence of the latter in ordering the plaintiff to do dangerous work with insufficient help, it is held competent for the plaintiff to testify how the injury was received, or what caused it, and why more hands were needed, when stating facts within his own knowledge, and it is not objectionable as opinion evidence.

#### 10. Principal and Agent—Vice-Principal—Evidence—Control of Employees—Trials.

The evidence in this case held sufficient for the jury to infer that the agent of the principal defendant represented the latter, and that a re-

HOLLIFIELD v. TELEPHONE CO.

fusal by the plaintiff, and the other employees working under him, to obey his orders would be followed by a discharge. *Turner v. Lumber Co.,* 119 N. C., 387, cited and applied.

### 11. Damages—Negligence—Evidence—Character.

In an action to recover damages for a personal injury alleged to have been caused by the negligence of the defendant's vice-principal, it is competent to show that the plaintiff was sober and industrious, upon the question of his earning capacity and the extent to which it had been impaired by the injury.

### 12. Appeal and Error—Evidence—Expert Witnesses—Personal Injury—Damages—Harmless Error.

In an action to recover damages for a personal injury alleged to have been negligently inflicted on the plaintiff by the defendant, the statement of a medical expert witness that he could form an opinion as to whether the plaintiff's condition would grow worse is not prejudicial to the defendant, when his testimony is solely directed to the extent of the present injury falling under his observation as attending physician.

### 13. Principal and Agent—Negligence of Agent—Joint Liability—Damages.

An order by the vice-principal directing an employee to do certain work under dangerous conditions, from which an injury resulted to the plaintiff, and which was negligent in him to have given, renders both the principal and his vice-principal jointly liable for the resultant damages.

### 14. Instructions—Expression of Opinion—Negligence—Contributory Negligence—Assumption of Risks—Burden of Proof.

In an action by an employee to recover damages for the negligence of his employer in failing to furnish sufficient help to do the work required of him, a charge to the jury that being short of hands would not, of itself, legally excuse the defendant was not an expression of opinion forbidden by the statute; and that the charge as to negligence, contributory negligence, assumption of risk, and the burden of proof was free from error.

BROWN, J., dissenting.

CIVIL ACTION tried before *Justice, J.,* and a jury, at February Term, 1916, of McDOWELL.

This action was brought to recover damages for personal injuries alleged to have been caused by the joint negligence of the defendants.

Plaintiff alleged that on 1 August, 1913, he was employed by the defendant company to load the cars of the C. C. and O. Railway Company with telephone poles 50 feet in length and from 18 inches to 2 feet in diameter at one end and 6 to 10 inches at the other. That the bark had been peeled from the poles, and they were not only very heavy, but "hard to handle with hand-power only." That it would require a dozen men to load the cars with safety, and that the poles are sometimes crooked, which makes them unwieldly and difficult to lift

and place in their proper position without as many as fifteen or twenty men to do the work.

Plaintiff further alleges: "That he was assigned by the defendant Telephone and Telegraph Company, through its foreman and vice-principal, the said J. C. Hollifield, to the work of loading upon cars telephone poles 50 feet long, of the character and kind hereinbefore described, with four other men and said foreman, who at times assisted in the work, and that plaintiff and the four other men with whom he was assigned to work were obliged, with the assistance of said foreman at times, to load the poles upon cars, and to place the poles in position by moving them about and rolling them over upon the cars, and that such number of men was insufficient, and that the defendant company knew, and that the defendant J. C. Hollifield knew, or that each of them ought to have known, that such number of men was insufficient to handle, load, and place the poles as required by the defendant; and that with such knowledge the defendant company and the defendant J. C. Hollifield negligently, and with reckless indifference to the safety of those engaged in the work, assigned plaintiff, with such insufficient number of men, to the work of loading said poles, and in so assigning him to work with such insufficient number of men in the loading and handling of said poles negligently failed to provide for plaintiff a reasonably safe place and reasonably safe surroundings and conditions under which to do the work so assigned to him. That while plaintiff, who had no previous experience at such work, and who had no warning whatsoever from the defendants, or either of them, as to the dangers of the work, on the first day of his employment was assisting, to the best of his skill and ability, in the loading and placing of said poles, that he was negligently-ordered and required by the defendant J. C. Hollifield—who had charge of and was directing and superintending the work for the defendant Telephone and Telegraph Company, clothed with the power and authority conferred upon him by said company to employ and discharge laborers who declined or omitted to obey the orders and perform the work required of them—and was therefore ordered and required by the defendant company, to cross over the pole, after it had been rolled upon a flat-car, and hold against the end of the pole while the other men, under the orders and requirement of the said J. C. Hollifield as foreman, engaged in an effort to roll the pole over in the direction in which plaintiff was standing, to place the same in position with other poles which had been loaded, plaintiff being so required to hold against said pole to prevent the end which he was attempting to hold from going beyond the point, alongside the other poles, to which said foreman desired to have it placed; that said pole was very heavy and was very crooked and so hard to handle by the few

men engaged in handling it that it was almost impossible with the utmost exertion which the men could possibly employ, and with great and unreasonable strain upon their part, to roll it over and move it, and that it was impossible for the men who were required to handle this pole to properly handle and so control it as to regulate its movements with any reasonable degree of safety to the men engaged in an effort to handle and move it; that while plaintiff was so engaged by the negligent requirement of the defendants, and each of them, in holding against one end of said pole, that the other men with great effort and exertion succeeded in lifting and rolling up the crooked part of said pole from the floor of the car in order to roll the pole over, and the heavy crooked part of the pole, which was raised up some 2 or 3 feet from the floor of the car, suddenly and with great force fell over upon the floor of the car in the direction of and against plaintiff and the tool with which he was working, and violently struck him and hurled him off and beyond the car against a pile of logs and timbers upon the ground and injured him, as hereinafter alleged."

The telephone company filed a petition for removal of the case to the United States District Court upon the ground that it is a nonresident of this State and that J. C. Hollifield was fraudulently joined with it as a defendant for the purpose of preventing a removal to said court, and, further, that the complaint does not allege any joint cause of action against the defendants, but presents a separable controversy as to the telephone company which entitled it to the removal. The petitioner further alleged that the duty of furnishing a safe place for the plaintiff to work and a sufficient number of hands to assist the plaintiff was not such as defendants owed jointly to him, but that it was the sole duty of the petitioner.

Petitioner further alleged: "That the only negligence alleged in said complaint is the negligence of your petitioner in failing to furnish to the plaintiff a sufficient number of men to perform the work in which plaintiff was engaged, in failing to furnish to the plaintiff a reasonably safe and suitable place in which to work, and in failing to warn the plaintiff of the dangers to which he might be exposed while performing this work; that if these duties were owed to the plaintiff, they were not owed by your petitioner's servants or foremen; that it was no part of the duty of the said J. C. Hollifield to furnish the plaintiff with a safe and suitable place in which to do his work, or to warn the plaintiff of any danger to which he might be subjected while performing said work, and it does not appear from said complaint that the said J. C. Hollifield failed or neglected to perform any duty or duties which he owed to the plaintiff, which failure proximately caused the plaintiff's injury, and your petitioner expressly avers that the said

J. C. Hollifield did not fail or neglect to perform any duty or duties which he owed to the plaintiff, and petitioner expressly denies that the plaintiff's injury, if any he sustained, was proximately caused by any negligence or failure of duty on the part of the said J. C. Hollifield; that the said J. C. Hollifield was simply the boss of the gang of men in which the plaintiff was working, and as such boss assisted the plaintiff and the other employees in loading said poles, and was working with the plaintiff, assisting him, at the time the plaintiff alleges he was injured, and was, as your petitioner is advised and believes, a fellow-servant of the plaintiff, for whose negligence your petitioner was not and cannot be held responsible; and your petitioner avers that if the plaintiff was injured by the turning of the pole, as alleged in the complaint filed in this cause, the turning of said pole was not the result of any act on the part of the said J. C. Hollifield, as the said J. C. Hollifield was not at that time engaged in turning said pole, but was simply assisting the plaintiff in holding same."

Petitioner also alleges that the defendant J. C. Hollifield has not employed counsel to defend him; that he is a son of plaintiff and is insolvent, and that plaintiff has no intention of prosecuting this suit against defendant Hollifield, and that the allegations against him were made for the sole purpose of preventing a removal of the case to the Federal court and in pursuance of a conspiracy between plaintiff and his son for that purpose.

The court refused to remove the case, and the telephone company excepted.

At the trial of the case before a jury a verdict was rendered for the plaintiff as follows:

1. Was the plaintiff injured by the negligence of the defendant Southern Bell Telephone and Telegraph Company, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: "No."

3. Did the plaintiff assume the risk of injury, as alleged in the answer? Answer: "No."

4. What damage, if any, has the plaintiff sustained? Answer: "$5,000."'

Judgment was entered upon the verdict against both defendants, and the telephone company, having noted its exceptions, appealed to this Court.

*Pless & Winborne and W. T. Morgan for plaintiff.*
*A. Hall Johnston, A. S. Barnard, and B. J. Clay for defendants.*

WALKER, J., after stating the case: We have uniformly decided in this Court that when a verified petition which contains facts sufficient under the law to entitle the applicant to a removal is filed and is accompanied by a proper bond, the jurisdiction of the State court is at an end, and that the issues of fact, if properly raised by the petition and papers in the cause, are to be tried and determined by the Federal court and not by the State court in which the action was brought. *Herrick v. R. R.,* 158 N. C., 307; *Lloyd v. R. R.,* 162 N. C., 485; *R. R. v. McCabe,* 213 U. S., 207; *Wecker v. National Enameling Co.,* 204 U. S., 176. But before the State court is under any duty or obligation to surrender its jurisdiction it must appear affirmatively, and by specific allegation of the facts constituting the alleged illegal or fraudulent joinder of a resident with a nonresident defendant, that the same exists, and it is not sufficient to charge generally or by indefinite averments that the joinder is or was intended to be in fraud and prevention of the nonresident's right of removal. *Hough v. R. R.,* 144 N. C., 692; *Tobacco Co. v. Tobacco Co.,* 144 N. C., 352; *Shane. v. R. R.,* 150 Fed., 801.

The plaintiff is entitled to have his cause of action considered as stated in his complaint. If there has been a joint tort committed, he may sue the wrong-doers jointly or separately, at his election, as they are liable to him in either form of action. *Hough v. R. R., supra; Smith v. Quarries Co.,* 164 N. C., 338; *R. R. v. Miller,* 217 U. S., 209; *R. R. v. Thompson,* 200 U. S., 206. When a party is in the lawful assertion of a right in bringing his action, the law attaches no importance to his motive in pursuing a course which he has a right to take. *Hough v. R. R., supra.* It was said in *R. R. v. Dixon,* 179 U. S., at p. 135: "The question to be determined is whether the Court of Appeals erred in affirming the action of the (State) Circuit Court in denying the application to remove; and that depends on whether a separable controversy appeared on the face of plaintiff's petition or declaration. If the liability of defendants, as set forth in that pleading, was joint, and the cause of action entire, then the controversy was not separable as matter of law, and plaintiff's purpose in joining Chalkley and Sidles was immaterial. The petition for removal did not charge fraud in that regard or set up any facts and circumstances indicative thereof, and plaintiff's motive in the performance of a lawful act was not open to inquiry."

Nor does the fact of the resident defendant's insolvency make any difference. It is not the amount that may be recovered eventually, but the right to sue him, that is the material question involved. *Hough v. R. R., supra.* And the mere allegation of a conspiracy to prevent a removal is of no more consequence without the statement of matter

which shows that one existed to do a wrong. The right to removal then turns upon the allegation of sufficient facts upon which to predicate it. "While a case may in proper instances be removed on the ground of false and fraudulent allegations of jurisdictional facts, the right does not exist, nor is the question raised by general allegations of bad faith, but only when, in addition to the positive allegation of fraud, there is full and direct statement of the facts and circumstances of the transaction sufficient, if true, to demonstrate that the adverse party is making a fraudulent attempt to impose upon the court and so deprive the applicant of his right of removal." *Smith v. Quarries Co.,* 164 N. C., 338, 352, citing *Rea v. Mirror Co.,* 158 N. C., 24; *K. C. R. R. Co. v. Herman,* 187 U. S., 63; and numerous other cases. The State court does not hear the proof of the fraud and pass upon the issue, as that is left for the other court to do; but this rule applies only "as to such issues of fact as control and determine the right of removal, and on an application for removal by reason of fraudulent joinder, such an issue is not presented by merely stating the facts of the occurrence showing a right to remove, even though accompanied by general averment of fraud or bad faith; but, as heretofore stated, there must be full and direct statement of facts sufficient, if true, to establish or demonstrate the fraudulent purpose." *Smith v. Quarries Co., supra.*

The defendant company relied upon *Rea v. Mirror Co., supra,* and *Wecker v. National Enameling Co., supra;* but it will be found upon an examination of those cases that there were direct, positive, and specific statements in the petitions to the effect that the resident defendants had nothing to do with the alleged wrongs, and were not even present when they were committed, but were employed in another department of the business not related in any way to the work in which the plaintiffs were engaged, and the facts were fully set forth so that it could be seen that there was a fraudulent joinder. But in this case the plaintiff has alleged in his complaint that J. C. Hollifield was superintendent of the work in which plaintiff was employed at the time he was injured, had general charge and control of it, and was clothed with authority to employ and discharge the plaintiff, and the other hands, for disobedience of his orders, and generally represented his principal, the telephone company, in this respect, and that, holding this position in the service of the company, he directed the plaintiff, who was inexperienced, to perform work which J. C. Hollifield knew to be dangerous, and without proper warning of the danger to his subordinates, or proper instructions to them as to how to do the work with safety. This allegation is not directly controverted or categorically denied, but the petitioner merely avers that Hollifield was a boss of the gang of hands to which plaintiff belonged, and was assisting

46—172

him and his coemployees at the time of his injury, and that it is advised and believes that Hollifield was their fellow-servant, and that the duty to furnish a sufficient force to load the cars with the poles was one owing by the petitioner only, and not by J. C. Hollifield, and that the latter did not fail to perform any duty owing by him to the plaintiff which proximately caused the injury. This is not an adequate denial of Hollifield's authority over the gang of workmen, nor is it any sufficient statement of facts showing a case of fraudulent joinder. It would seem to be more an expression of petitioner's opinion as to the nature of the transaction and of inferences it has drawn from undisclosed facts, or from the advice of counsel, rather than a plain and direct statement of relevant facts which are indicative of fraud. This case, therefore, is not like *Rea v. Mirror Co., supra,* or *Wecker v. National Enameling Co., supra,* but is very much like *Smith v. Quarries Co., supra,* except that the allegation of the petition for removal, which was denied, was far more specific, as to the authority of Welsh and Eller and the plaintiff, in that case, and also as to their duties and powers as employees of the nonresident defendant, than is the corresponding allegation in this case. The petition in *Smith's case* was very elaborate in its statements, and charged everything to be found in this petition, and contained far more relevant and material facts, and yet it was held to be insufficient to warrant a removal.

We might well rest our conclusion upon that decision without further discussion. But it is suggested that the plaintiff has not pursued his action against the resident defendant to final judgment. This is a clear error, as the record shows. He failed to plead, and judgment by default was entered against him, which established as against him, under our procedure, and procedure generally, the cause of action alleged in the complaint. *Blow v. Joyner,* 156 N. C., 140; *Graves v. Cameron,* 161 N. C., 549; *Patrick v. Dunn,* 162 N. C., 19; *Plumbing Co. v. Hotel Co.,* 168 N. C., 577. It was not necessary to submit an issue as to his negligence, when he admitted it by failing to answer. *Justice Brown* well says in *Plumbing Co. v. Hotel Co., supra:* "The default is an admission of every material and traversable allegation of the declaration or complaint necessary to the plaintiff's cause of action. 23 Cyc., 752. It admits all the material averments properly set forth in the complaint, and of course everything essential to establish the right of the plaintiff to recover. Any testimony, therefore, tending to prove that no right of action existed, or denying the cause of action, is irrelevant and inadmissible," citing *Garrard v. Dollar,* 49 N. C., 176; *Lee v. Knapp,* 90 N. C., 171; *Blow v. Joyner, supra; Graves v. Cameron, supra.* This being so, the only thing left to do in regard to the resident defendant was the assessment of damages, after

ascertaining the negligence of the other defendant. This was done, as the record shows, and a final judgment was then entered against both defendants for the amount of damages, and costs. The language of the judgment is "that plaintiff have and recover judgment against the defendants in the sum of $5,000 and for the costs." The remark attributed to counsel was explained, and the record stands as we have stated it to be.

We have sufficiently considered *Rea v. Mirror Co.,* 158 N. C., 25, which was much relied on by the defendant, and shown that it is like *Wicker v. Enameling Co.,* 204 U. S., 176, in the respect that in both cases the servant injured and the one sued were in different branches of the service, and admittedly so; but in *Smith v. Quarries Co.,* 164 N. C., 338, both servants were engaged in the same employment, as is the case here, and we cannot well remove this suit without seriously impairing that case as an authority, if not overruling it, and we think it was correctly decided and is well supported by authorities in the Federal and State courts. We said in *Hough v. R. R.,* 144 N. C., at 700: "The defendant, who petitioned for a removal, simply controverts the allegation of the complaint, for that is what the petition means, and all that it means. Its vituperative expressions prove nothing. Calling an act fraudulent does not make it so. It must be alleged in what the fraud consists. We have practically nothing before us but the joinder and the bare allegations of fraud. That will not do." What was said in that case as to proof of the fraud referred, of course, to such proof in the Federal court, where the issue of fraud is tried, if properly made in the State court. The *Hough case* is a direct authority in support of the right to join the defendants in this action. In respect to this right of joinder we find the following clear statement of law in 1 Mechem on Agency (2 Ed.), sec. 1460: "In practically every case in which the master could be held liable for the negligence of his servant, the servant himself is personally liable. This must be so from the very nature of the case. The whole theory of the master's liability is that the servant has done a legal wrong for which the law imposes a liability upon the master, however innocent he may be. The person actually and primarily at fault, however, is the servant, and if he would not be liable, the master ordinarily cannot be. The liability of the servant is the direct and primary one; that of the master is a secondary and imputed one. In actual practice the liability of the servant or agent is usually ignored because it is more convenient or effective to pursue the master; but the servant's liability nevertheless exists." The Court expressed a doubt in *Dishon v. R. R.,* 133 Fed. Rep., 471, which was afterwards resolved against its view in *R. R. v. Thompson,* 200 U. S., 206, to which it had referred for a solution of the question in doubt, as the writ of error was then pending.

Coming to the exceptions taken at the trial before the jury, we find several questions of evidence presented. Some of the questions put to witnesses were unanswered, and, therefore, harmless. There is nothing to show what the answer would have been, nor what was expected to be proved, and we cannot see that the appellant was in any way prejudiced by the ruling of the court. *Jenkins v. Long,* 170 N. C., 269. It was competent to show who was in charge of the work, and that J. C. Hollifield was the man. That was one of the important questions in the case. We do not see why it was not also competent to prove that the hands complained to Hollifield that the force was not sufficient to handle the poles, and his reply admitting it, with the order to go on with the work. It was a part of what was done at the time, and the declaration of one who was then acting in the place of his principal. The order given by J. C. Hollifield to the hands was a relevant fact and the court properly admitted evidence to prove what it was. It is one of the allegations of the complaint that plaintiffs were ordered by Hollifield to do the work and that he had the power to give the order. The court did not err in allowing plaintiff to testify how the injury was received or what caused it, and why more hands were needed. He was merely stating facts within his own knowledge. In other words, he was stating what he had seen and the nature of which he understood by former experience. It was not merely an opinion. *Murdock v. R. R.,* 159 N. C., 131; *Britt v. R. R.,* 148 N. C., 37; and especially *Ives v. Lumber Co.,* 147 N. C., 306, which is similar in this respect. All these rulings were correct. There was evidence in the case from which the jury could reasonably draw the inference that J. C. Hollifield was superintendent or foreman of the gang of laborers and as such represented his principal, and that those who acted under his orders had just reason to believe that the refusal or failure to obey him would or might be followed by a discharge from the service in which they were engaged. *Turner v. Lumber Co.,* 119 N. C., 387; *Mason v. R. R.,* 111 N. C., 482 (*s. c.,* 114 N. C., 718); *Shadd v. R. R.,* 116 N. C., 968. Upon the question of the plaintiff's earning capacity and the extent to which it had been impaired by the injury, we do not see why it was not competent to prove his habits, that is, that he was sober and industrious, for such a man would surely be able to do more for himself in the world than a lazy, drunken, and thriftless one. 8 Rul. Case Law, sec. 172; *C. M. and E. Company v. Anderson,* 98 Texas, 156; *Kinston v. R. R.,* 112 Mich., 40. The testimony of Dr. Justice seems to be based upon a personal examination of plaintiff to ascertain his mental and physical condition, and he really spoke only of such condition. In answer to the hypothetical question, he simply stated that he

could form an opinion as to whether the plaintiff's condition will continue as it is or whether it will be worse. In this respect nothing harmful was said by him. This also substantially applies to the testimony of the medical experts. The motion to strike out testimony, even if the latter is incompetent, was within the sound discretion of the court. *S. v. Efler,* 85 N. C., 585; *Johnson v. Allen,* 100 N. C., 136; *Duggar v. McKesson, ibid.,* 1; *S. v. Pratt,* 88 N. C., 639; *Simpson v. Pegram,* 112 N. C., 541.

There was evidence for the jury upon the question of negligence, and the motion for a nonsuit was properly overruled. The jury could infer from the evidence submitted to them that J. C. Hollifield was representing the defendant in superintending the work of loading the cars with telephone poles, and had power and authority over the hands engaged in it. 26 Cyc., 1307. If he ordered them to do work which would expose them to danger, and this order was negligently given, he would be liable jointly with his master, the defendant, for the resultant injury. *Means v. R. R.,* 126 N. C., 424; *Allison v. R. R.,* 129 N. C., 336; 26 Cyc., 1383, and especially *Wright v. Crompton,* 53 Ind., 337; *Howe v. R. R.,* 60 L. R. A. (Wash.), 959; *R. R. v. Thompson,* 200 U. S., 206. There was no expression of opinion by the Court, but simply a statement that if defendant was short of hands this would be no legal excuse for the wrong. It was its duty to have a sufficient force to do the work and make it reasonably safe to perform it. *Pigford v. R. R.,* 160 N. C., 93; *Shaw v. Mfg. Co.,* 146 N. C., 235.

The charge of the court as to negligence and contributory negligence was in accordance with our decisions upon those questions. The court defined the duty of the defendants with respect to the plaintiff while he was performing the task assigned to him, and also the duty of plaintiff to himself, and this was done with full statement as to what care and circumspection was required of each. The judge did not place too great a burden upon the defendants, or either of them, nor was there any departure from the true rule as to proximate cause. We stated the doctrine of proximate cause as applicable to both negligence and contributory negligence in *Treadwell v. R. R.,* 169 N. C., 701. The judge gave the instructions requested by the defendant, as far as he could do so and stay within the law of the case, and they were not only given to this extent, but in a very clear and ample manner. The charge and responses to special prayers embraced all the law which was applicable to the facts, disclosed by the evidence, including that relating to assumption of risk.

We have, after a thorough examination of the case, been unable to discover any error therein.

No error.

BROWN, J., dissenting: I am of opinion that the motion to remove this case to the Federal court should have been granted. It is held in *Rea v. Mirror Co.*, 158 N. C., 25, by a unanimous Court in an opinion by *Mr. Justice Hoke* that "When a petition for the removal of a cause from the State to the Federal court, properly verified and accompanied by a proper and sufficient bond, has been filed in the State court in apt time in an action brought against a nonresident corporation and its resident manager, alleging a joint wrong, and the petition contains allegations of fraudulent joinder, together with full and direct statements of the facts and circumstances sufficient, if true, to demonstrate that there has been such fraudulent joinder of the resident defendant, the jurisdiction of the State court is at an end and the order should be made removing the cause, leaving the remedy for the opposing party in the Federal court upon motion to remand the cause or other proper procedure therein."

The petition for removal, in my opinion, comes up completely to all the requirements of the aforegoing case. It alleges a separable controversy between the plaintiff and the telephone company; that the only negligence alleged is a failure to furnish sufficient men, failure to warn, and failure to furnish a reasonably safe place in which to work and safe surroundings and conditions; that the negligence, if any, which proximately caused the injury was the negligence of the telephone company.

The petition further alleges failure of the complaint to state a joint cause of action; that J. C. Hollifield did not jointly with the telephone company owe the defendant the duty to do the things the failure to do which constituted the alleged negligence; that all such duties were owing to the plaintiff only by the telephone company, and not by its servants or its alleged foreman; that the injury to the plaintiff, if any, was caused by the negligence of the defendant the telephone company, and no failure on the part of the said J. C. Hollifield.

The petition further alleges that J. C. Hollifield is taking no interest in this suit; that he has employed no counsel; that he is the son of the plaintiff; that he, to the knowledge of the plaintiff, is and was totally insolvent; that he was not in good faith made a party defendant, and that the plaintiff does not expect to prosecute the action against him, or seriously attempt to obtain a judgment against him, and that he was wrongfully, unlawfully, improperly, and fraudulently joined as a defendant for the sole purpose of fraudulently preventing or attempting to prevent removal of the cause; that at the institution of the suit the plaintiff, his counsel, and J. C. Hollifield knew that no cause of action existed as to him, and that the allegations attempting to allege a joint liability were knowingly false and fictitious, and made for the sole

purpose of defeating a removal; that there existed at the time, and still exists, an unlawful conspiracy between the plaintiff, his son, J. C. Hollifield, and counsel for the plaintiff to thus fraudulently deprive the telephone company of its right of removal.

The allegations of this petition must be taken to be true so far as the State court is concerned. *Dishon v. R. R.,* 133 Fed., 47, and cases cited. If the English language is taken in its usual acceptation, the allegations of this petition charge a fraudulent joinder of the plaintiff's son, utterly insolvent, for the purpose of preventing the removal to the Federal court. The petition alleges that J. C. Hollifield, the son, did not contribute in any way to the plaintiff's injury, and was in no sense liable therefor. It sets out the acts of the defendant J. C. Hollifield to support these allegations. The case comes within the ruling of the Federal court in the *Dishon case, supra,* which is cited with approval in *Ky. v. Powers,* 201 U. S., p. 1.

The proceedings in the trial court, which are set out in the record, substantiate all of the allegations of the petition for removal. The record shows that J. C. Hollifield was the son of the plaintiff, that he was utterly insolvent, that he filed no answer, employed no counsel, and made no defense. The record further shows that the plaintiff did not intend to take any judgment against him except by default and inquiry.

No issues were tendered affecting J. C. Hollifield and no judgment was moved for against him. The counsel for the plaintiff stated in open court: "We do not now expect to pursue our inquiry on the judgment by default as to J. C. Hollifield."

Many Federal cases can be cited sustaining the right to remove this case, but it is necessary to quote only one, *Wecker v. Enam. Co.,* 204 U. S., 176, which is decisive in this case. In the *Wecker case* two individuals, employees of the corporation, were joined as defendants and allegations made in the complaint, for the purpose of charging them with liability; that they failed to perform certain duties imposed upon them, and as a result of such negligence plaintiff lost his balance and fell into one of the vats and was greatly injured. Plaintiff alleges that his injury was the result of the joint negligence of the corporation and the two individuals. The Supreme Court held that the case was removable upon the face of the petition, saying: "While the plaintiff, in good faith, may proceed in the State courts upon a cause of action which he alleges to be joint, it is equally true that the Federal court should not sanction a device to prevent the removal to the Federal court, where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court, as to permit the State court, in proper cases, to retain their own jurisdiction."

With all deference to the opinion of my brethren, I am of opinion that if it has ever been demonstrated in any case that there was a fraudulent joinder of parties defendant to prevent a removal to the Federal court, it has been demonstrated in this case.